350 F.2d 427
 H. B. ROBERTS, Business Manager of Local 925, International Union of Operating Engineers, and Local 925, International Union of Operating Engineers, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 18942.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 4, 1965.
 Decided July 21, 1965.
 
 Mr. Theodore J. St. Antoine, Washington, D. C., with whom Messrs. J. Albert Woll and Robert C. Mayer, Washington, D. C., were on the brief, for petitioners.
 Mr. Gary Green, Atty., N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., were on the brief, for respondent.
 Before FAHY, DANAHER and McGOWAN, Circuit Judges.
 FAHY, Circuit Judge.
 
 
 1
 The case requires determination of the validity of an order of the Board finding that the petitioner Union, and its agent, petitioner Roberts, had engaged in unfair labor practices in violation of Section 8(b) (1) (A) of the Act,
 
 
 2
 By imposing a fine against Wallace J. Martin because Martin had filed unfair labor practice charges with the Board or had failed to exhaust his internal union remedies prior to filing charges with the Board * *.
 
 
 3
 That the fine was imposed by the Union upon its member Martin is not disputed; nor is it disputed that it was imposed in connection with his having filed charges with the Board against the Union. Petitioners claim, however, with some unresolved factual support, that the fine was imposed only because Martin filed the charges without having previously exhausted his internal union remedies. The Board's position is that this makes no difference, that is, that the availability of such internal remedies, and failure of the member to pursue them, is not a defense to the unfair labor practice of imposing the fine.
 
 Section 8(b) (1) (A) provides:
 
 4
 It shall be an unfair labor practice for a labor organization or its agents —
 
 
 5
 (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *.
 
 Section 7, thus referred to, provides:
 
 6
 Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3).
 
 
 7
 There is an explicit provision, Section 8 (a) (4), that it shall be an unfair labor practice for an employer
 
 
 8
 to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act * * *.
 
 
 9
 No such provision was added in 1947 when unfair labor practices of labor organizations were embodied in the amended Act. We think none was required.[1] Indeed, Section 8(a) (4), and its predecessor in like terms in the original Wagner Act of 1935 only made clear that which was implicit in original Section 8(1). For we assume, and petitioners agree, as stated in their brief, that "the right of an employee to file charges is protected under Section 7."
 
 
 10
 That a fine such as here imposed is restraint or coercion in the ordinary meaning of those terms is clear. The question is whether it is the sort of restraint or coercion intended to be proscribed when the conduct is that of a labor organization with respect to its member. The crucial question more precisely is whether membership discipline by such a fine is, as petitioners phrase the matter, "outside the range of conduct which Congress meant to reach by the terms `restrain or coerce'." The heart of the petitioners' position is that such disciplinary action, in the contemplation of the Labor Acts, is an internal union affair beyond Board jurisdiction, since, it is said, such jurisdiction over union conduct respecting its members extends only to a member's status as an employee, not to his status as a union member. And much legislative history is referred to as indicative of the congressional intent to leave internal affairs of unions to the unions: 93 Cong.Rec. 4318 (daily ed. April 29, 1947), 2 Leg.Hist. L. M.R.A. 1097; 93 Cong.Rec. 4317-18 (daily ed. April 29, 1947), 2 Leg.Hist. L.M.R.A. 1096; 93 Cong.Rec. 4398-4401 (daily ed. April 30, 1947), id. at 4568 (daily ed. May 2, 1947), 2 Leg.Hist. L.M. R.A. 1138-1143, 1216-17; and see H.R. Conf.Rep. No. 510, 80th Cong., 1st Sess p. 46.[2]
 
 
 11
 The Board, however, the same day it decided this case also decided Local 138, International Union of Operating Engineers (Charles S. Skura), 148 NLRB No. 74, 57 LRRM 1009, where the question was substantially the same as the one now before us. The Board in that case rejected the position urged by the Union, stating in part:
 
 
 12
 Section 10 of the Act grants to the Board exclusive authority to prevent and remedy unfair labor practices, and, in furtherance of the exercise of the Board's authority, confers upon any person the right to file an unfair labor practice charge.[6] The right to file charges is indispensable to the administration of the Act since the Board cannot initiate its own processes and no unfair labor practice complaint can issue in the absence of a valid charge.[7]
 
 
 13
 6. Also see, the National Labor Relations Board, Rules and Regulations Series 8, as amended, Section 102.9.
 
 
 14
 7. Hercules Powder Co. v. N. L. R. B., 297 F.2d 424, 433 (C.A.5).
 
 
 15
 * * * * *
 
 
 16
 Just as an employer violates the Act by resorting to restraint and coercion to restrict the rights of an employee to file a charge, so too, does a labor organization infringe the rights of employees under this law by resorting to unlawful means to prevent or restrict employees from filing charges. As such conduct by an employer violates Section 8(a) (1), so does a labor organization's use of restraint or coercion violate Section 8(b) (1) (A).[10]
 
 
 17
 10. International Ladies Garment Workers' Union, AFL-CIO (Bernhard-Altmann) v. N. L. R. B., 366 U.S. 731, 737-738, 81 S.Ct. 1603, 6 L.Ed.2d 762.
 
 
 18
 The Board distinguished such decisions as it had rendered in Wisconsin Motor Co., 145 NLRB 1097, 55 LRRM 1085, on the ground that the fine there, which was held not to be an unfair labor practice but protected by the proviso to Section 8(b) (1) (A), was imposed to compel compliance with internal union affairs falling short of "job discrimination"; whereas in Skura the Board held the Union attempted to "regulate its members' access to the Board's processes," as in the present case. In other words, by filing a charge with the Board in this case Martin stepped beyond the internal affairs of the Union and into the public domain. The Act, in enabling the Board to inhibit the Union from penalizing him for doing so keeps open the channels created by Congress for the administration of a public law and policy. This is not, we agree with the Board, an inroad upon those internal union affairs left by the Act and its policy to be administered solely by the Union.
 
 
 19
 We have of course considered Section 101(a) (4) of the 1959 Labor-Management Reporting and Disclosure Act, 73 Stat. 522, 29 U.S.C. § 411(a) (4). It prohibits a labor organization from limiting "the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding," provided, however, "[t]hat any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * *." This provision gives aid and comfort to the Board as well as to petitioners. As to the former, this statutory protection of a member's right to institute proceedings supports the authority of the Board to require the labor organization and its agent to cease limiting a member's access to the Board by fining him for filing charges against his union. On the side of petitioners the proviso can be read, as Senator Goldwater did in its progress through Congress,[3] as precluding Board action against the organization for fining a member who filed a charge when he had not pursued for four months, if no solution were reached in a shorter period, reasonable hearing procedures within the organization, which we assume for present purposes existed and were not pursued.
 
 
 20
 Section 101(a) (4) takes coloration from its environment in the 1959 Act, (73 Stat. 519, 29 U.S.C. § 401 et seq.) containing a "Bill of Rights of Members of Labor Organizations" and machinery for effectuation of the rights. This statute, speaking roughly, parallels rather than meshes into the pre-existing Acts insofar at least as the latter proscribe unfair labor practices of either employers or labor organizations. Thus considered it would seem that Section 101(a) (4) has little bearing one way or the other upon the right of the Board by its traditional methods to preclude coercion upon one seeking its protection, including protection against labor organizations after enactment of the Taft-Hartley Amendments in 1947. This fortifies our agreement with the Board that the proviso to Section 101(a) (4) does not legalize a coercive fine imposed upon a member by a labor organization for his failure to exhaust internal remedies for four months before filing an unfair labor practice charge against his union. The proviso does authorize indeed it may require, the agency or court to which the member comes for relief to withhold the exercise of its authority — for four months if reasonable internal procedures are available and are not earlier exhausted — in deference to the congressional desire that a solution be reached by means other than at the hands of public authorities. Approval of such restraint by agency or court is quite different, however, from freeing the Union itself to impose a fine for failure of a member to exhaust such procedures. As then Professor Cox put it, "the rule is one of judicial administration." Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 839 (1960). And see the remarks of then Senator Kennedy, 105 Cong.Rec.16414 (daily ed. Sept. 3, 1959), 2 Leg.Hist. L.M.R.D.A. 1432.
 
 
 21
 We limit our approval of the Board's construction of its powers to the case before us, where the fine was not imposed because of the member's harassing conduct as a member, but, as the case is presented to us, simply because he filed the charges or did so without pursuing possible internal remedies.
 
 
 22
 The Union urges that in any event the Board's order in requiring the fine to be returned cannot be sustained because it has not been paid. If this is established the order must be modified accordingly. With this qualification it will be enforced.
 
 
 23
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 When the 1947 Taft-Hartley bill was in Congress it passed the House with a provision, Section 8(c) (5), that it would be an unfair labor practice for a union "to fine or discriminate against any member, or subject him to any discipline or penalty, on account of his having criticized, complained of, or made charges or instituted proceedings against, the organization or any of its officers * * *." 1 Leg.Hist. L.M.R.A. 53-54. This provision was deleted by the conferees and omitted from the Act. H.R. Conf.Rep. No. 510, 80th Cong., 1st Sess. p. 46, U.S.Code Cong.Service 1947, p. 1135. However, it will be seen that this language is much broader than Section 8 (a) (4), a provision which stems from the original Wagner Act. The deletion of the proposal in the Taft-Hartley bill does give some support to the petitioners' position, but it is not dispositive. The legislators may have thought that the proposal was worded too broadly and abandoned it for that reason. Moreover, the legislators may have decided it was unnecessary to make specific that it might be an unfair labor practice under Section 8(b) (1) to fine or to discriminate against a member for filing a charge against a union
 
 
 [2]
 Reliance is also placed on the language of the proviso to Section 8(b) (1) (A),supra. But we think the imposition of the fine in this case was too remote from a rule with respect to the acquisition or retention of membership to be protected by the mere language of the proviso.
 
 
 [3]
 105 Cong.Rec. 6847, 9108 (daily ed. May 7, 1959, and June 8, 1959), 2 Leg.Hist. L.M.R.D.A. 1270, 1280; and see 105 Cong.Rec. A.8510, (daily ed. Oct. 2, 1959), 2 Leg.Hist. L.M.R.D.A. 1844 (remarks after passage)