INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, AFL–CIO, and its Local 22, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 16055.

United States Court of Appeals Third Circuit.

Argued March 29, 1967.

Decided June 22, 1967.

M. H. Goldstein, Philadelphia, Pa. (Goldstein & Barkan, Philadelphia, Pa., on the brief), for petitioners.

Hans J. Lehmann, N. L. R. B., Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Provost, Asst. General Counsel, Warren M. Davison, Washington, D. C., attorney, N. L. R. B., on the brief), for respondent.

Before HASTIE and SEITZ, Circuit Judges, and BODY, District Judge.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

On the petition of an international union and one of its locals for the review

of an unfair labor practice decision and order, 159 NLRB No. 95, and a cross-petition of the National Labor Relations Board for enforcement of the order, we here consider the merits of the Board's so-called *Skura* rule, as recently adopted in Local 138, International Union of Operating Engineers and Charles S. Skura, 1964, 148 N.L.R.B. 679, and sanctioned by the Court of Appeals for the District of Columbia in Roberts v. N. L. R. B., 1965, 121 U.S.App.D.C. 297, 350 F.2d 427.

The alleged unfair labor practice in this case is the union's conduct in discharging Edwin Holder from union membership because he had filed with the Board an unfair labor practice charge against the local and its president without first exhausting prescribed and available remedies within the labor organization.

Holder had filed intra-union charges with his local, alleging that the local president had wrongfully caused Holder's employer to discriminate against him because of "certain legally protected activity". Except for the quoted phrase, the present record does not disclose details or even the substance of Holder's complaint. The local considered and dismissed these charges. The International Constitution of the union provided for an appeal from the decision of a local to the General Executive Board of the International. It also required that any member "aggrieved by any action of * * * a local * * * shall exhaust all remedies and appeals within the Union, provided by this Constitution, before he shall resort to any court or other tribunal outside of the Union". Disregarding this requirement and without taking any intra-union appeal from the local's decision, Holder filed with the Board an unfair labor practice charge against the local, alleging the same conduct of which he had unsuccessfully complained to the local. Here again, the present record fails to specify the details of that conduct. The General Counsel refused to issue a complaint and the unfair labor practice charge was dismissed.

Shortly thereafter, Holder was charged before the trial board of his local with violation of the above cited provision of the International Constitution. He was found guilty and expelled from membership. He then appealed to the General Executive Board of the International which confirmed his expulsion.

Holder next initiated the present unfair labor practice proceeding, charging that the labor organization had violated section 8(b) (1) (A) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(b) (1) (A), by coercing him in the exercise of rights guaranteed by section 7 of the Act. Applying the *Skura* rule, the Board found a violation as charged and issued the unfair labor practice order which is now before us.

Section 8(b) (1) (A) reads in pertinent part as follows:

"It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * *."

Thus, the only rights which this subsection protects are those contained in section 7, which reads in its entirety as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3)."

Accordingly, our first inquiry is whether section 7 protects an employee's asserted

right to complain to the Board of his union's alleged unfair interference with his "legally protected activity" without first exhausting his remedy within the union as required by the union's constitution.

■■ It will be observed that section 7 says nothing about any right to file charges with the Board. That section is concerned exclusively with an employee's freedom to unionize, to bargain collectively, and to engage in other concerted activities, as well as the concomitant freedom to refrain from participating in such organized or concerted activity. These freedoms are, by necessary implication, attended by a remedial right of the employee to charge coercive abridgement of them in an unfair labor practice proceeding before the Board. Thus, a section 8(b) (1) (A) unfair labor practice can be established here by showing that rights incidental to organization or bargaining were the basis of Holder's complaint which led to punitive union action, and in no other way.

■ It is argued here, as it was in the Roberts and Skura cases that section 7 protects the employee's freedom to complain to the Board of union misconduct regardless of the foundation for the charge. But as we have just pointed out, if any respect is to be accorded the language of section 7, its protection of the right to file charges must be limited to complaints that the union has in some way interfered with the sort of activity that is described in that section. It may be that Holder's complaint was of such a breach of the union's duty to represent the employee fairly as the Court of Appeals for the Fifth Circuit recently found to be inherent in the collective bargaining process protected by section 7. Local Union No. 12, United Rubber, C.L.& P. Workers v. NLRB, 5th Cir., 1966, 368 F.2d 12. But this record contains no facts and no analysis by the Board upon the basis of which we can judge whether any type of violation of section 7 is involved here.

The Skura decision itself, which is indistinguishable from and followed in this case, is similarly lacking in any showing of how that controversy involved the subject matter of section 7. Only a few months earlier, in the so-called Wisconsin Motor case, Local 283, UAW, 1964, 145 NLRB 1097, the Board, after reviewing pertinent legislative history, had ruled that it had "not been empowered by Congress to police a union decision that a member is or is not in good standing or to pass judgment on the penalties a union may impose on a member so long as the penalty does not impair the member's status as an employee". 145 NLRB at 1104. In the Skura case, the Board recognized its Wisconsin Motor "opinion that the Act did not vest it with authority to police the internal discipline of a union short of job discrimination". 148 NLRB at 682. Hard put to distinguish the two cases factually, the Board announced and relied upon its view that "overriding public interest" required that a union not be permitted to discipline an employee in an effort to "limit access to the Board's processes". To that end, it apparently read into section 7, without any stated justification, a general right of access to the Board, unlimited by any requirement that the particular controversy involve organizational rights or rights inherent in collective bargaining.

In the Roberts case, the Court of Appeals said "we assume, and petitioners agree, as stated in their brief, that 'the right of an employee to file charges is protected under section 7'." 350 F.2d at 428. But the court seems not to have considered what we have attempted to demonstrate, that in order for the right to file particular charges to be protected by section 7, the charges themselves must assert misconduct which, if proved, would constitute a deprivation of rights declared in that section.

■ The Roberts opinion also points out that section 8(a) (4) expressly makes it an unfair labor practice for an employer "to discharge or otherwise discriminate against an employee because he has filed charges" under the Act. From this the court seems to imply that a

union should be treated in the same manner and that Congress must have so intended. But while the Taft-Hartley Act undoubtedly undertook to impose many responsibilities upon unions equivalent to the responsibilities of employers under the original Wagner Act, we find no basis for concluding that whatever had been required of the one is now implicitly required of the other. Indeed, included in the Taft-Hartley bill as it passed the House was a provision, section 8(c) (5), which stipulated that punitive action by a union against a member for filing charges against the union or otherwise taking issue with it constituted an unfair labor practice. 1 Leg.Hist. L.M.R.A. 53–54. But the conference committee deleted this section and the bill was enacted without it. H.R. Conf. Rep. No. 510, 80th Cong., 1st Sess. 46, U.S. Code Cong. Service 1947, p. 1135. Thus, it was not by inadvertence that Congress failed to include in the Taft-Hartley Act a general section explicitly protecting union members who filed charges against their unions from union reprisals.

■ In this area of Taft-Hartley Act restrictions on union conduct, imposed as "the result of conflict and compromise between strong contending forces", the Supreme Court has counseled "wariness in finding by construction a broad policy against" a type of conduct "when * * * it is clear that those interested in just such a condemnation were unable to secure its embodiment in enacted law". Local 1976, United Brotherhood of Carpenters, etc. v. NLRB, 1958, 357 U.S. 93, 99–100, 78 S.Ct. 1011, 2 L.Ed.2d 1186. Mindful of this admonition and its pertinence to the present issue, we think neither the board nor a court can properly employ its views of public policy as justification for engrafting upon section 7 a general right of unlimited access to the Board, the declaration of which the Congress considered but chose to withhold.

In these circumstances, if there were no other error in the Board's decision, we would remand the cause for reconsideration and further showing whether and

how section 7 rights are involved in Holder's original complaint. However, there are other considerations which require that the Board's decision be set aside.

■ We have not heretofore discussed the proviso of section 8(b) (1) (A), "[t]hat this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *." We think that proviso protects the union's action in this case.

■ We agree with the Board that the proviso does not enable a union to promulgate any rule it desires and hinge membership upon adherence. For example, a union rule which subjected a member to dismissal or other disciplinary action for filing charges with the Board against the union alleging conduct which, if proved, would constitute an unfair labor practice within some provision of the Act, would frustrate the operation of the Act and thus, by logical implication, be outside of the protection of the proviso. Here, however, the union rule in question required only that the union be given a fair opportunity to correct its own wrong before the injured member should have recourse to the Board. We do not see how such a rule offends public policy or impedes the normal and proper administration of the Act. Indeed, to the extent that such a rule relieves the Board of the unnecessary burden of grievances that can be settled within a union, it serves the purposes of the Act well. On the other hand, the member's right to charge his union before the Board is not detrimentally affected by requiring that the exercise of that right be postponed until after a practical and reasonable resort to internal remedies as provided by the union. Cf. Harris v. International Longshoremen's Assn., Local 1291, 3d Cir., 1963, 321 F.2d 801. Of course, a court or an administrative agency will determine for itself whether the alleged intraunion remedy is in fact available and whether resort to it would impose unreasonable delay or hardship upon the complainant.

Section 101(a) (4) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a) (4), both confirms our view of the impact of public policy in a situation such as this and makes it mandatory that the Skura rule be rejected and the Board's action in this case set aside. Section 101(a) (4) appears in that part of the 1959 Act which is entitled, "Bill of Rights of Members of Labor Organizations". It provides that "no labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency * * *. *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations * * *."

It will be observed that the subsection applies to proceedings "before any administrative agency", thus covering the present proceeding before the National Labor Relations Board. Indeed, the introductory section of the 1959 Act recites as one of its purposes the correction of union and management practices "which distort and defeat the policies of the" Taft-Hartley Act. But in applying the statute's general prohibition of union action restricting the right of a member to institute a proceeding before an administrative agency, the Board is equally obligated to respect the attending proviso, "that any such member may be required to exhaust reasonable hearing procedures * * * within such organization. * * *"

To avoid the impact of this proviso, the Board argues that the proviso does not say who may require the union member to exhaust internal hearing procedures and then reaches the surprising conclusion that it is the Board, rather than any labor organization, that is authorized by Congress to require that

a union member resort to reasonable intra-union procedures. We think this construction does violence to the structure and the sense of section 101. That section is entitled, "Bill of rights; constitution and bylaws of labor organizations". It consists of a number of provisions prescribing what unions may and may not do and require in the conduct of their affairs and in the treatment of their members. The general prohibition in the subsection here in question is expressly directed against labor organizations. Logically, and in normal reading, the attendant and qualifying proviso is an exception stating what such an organization may do despite the preceding general restriction upon its action. Moreover, there is no need for a proviso to authorize a court or an administrative body to postpone its action until a litigant shall exhaust intra-union remedies, since judicial and quasi-judicial bodies frequently exercise such discretionary power to postpone their own action pending the exhaustion of other remedies as a matter of inherent right without benefit of legislation.

For these reasons we hold, as has been said in a concurring opinion in one of our earlier decisions, that this subsection means "that a union may not restrict a member's resort to the courts except that it may require that the member first devote not more than four months to reasonable grievance procedures within the organization".[1] See Sheridan v. United Brotherhood of Carpenters, etc., Local 626, 3d Cir., 1962, 306 F.2d 152, concurring opinion of Hastie, J., at 160. But cf. Detroy v. American Guild of Variety Artists, 2d Cir., 1961, 286 F.2d 75, cert. denied 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388. It follows that in administering the National Labor Relations Act, the Board may not make the union's conduct in this case an unfair labor practice because section 101 (a) (4) of the Labor-Management Re-

---

1. There is no suggestion here that Holder could not have obtained intra-union review of his complaint against the local president within a four-month period.

Indeed, when he appealed his expulsion, the General Executive Board of the International considered and decided the appeal very promptly.

porting and Disclosure Act expressly sanctions it.

For these reasons, we reject the *Skura* rule and hold that the union has not committed any unfair labor practice within permissible interpretation of section 8 (b) (1) (A).

Accordingly, the Board's petition for enforcement of its order will be denied and, on the petition to review, the order will be set aside.