Edmond W. DESSINGUE, Plaintiff,

v.

S. KLEIN DEPARTMENT STORES, INC., etc. and Local 68–68A International Union of Operating Engineers, etc., Defendants.

Civ. A. No. 140–66.

United States District Court
D. New Jersey.

Oct. 27, 1967.

Okin, Pressler & Scherby, by Michael L. Scherby, Ridgefield, N. J., for plaintiff.

Harkavy & Lieb, East Orange, N. J., by Richard Semel, West Orange, N. J., for defendant S. Klein Dept. Stores, Inc.

Parsonnet, Parsonnet & Duggan, by Thomas L. Parsonnet, Newark, N. J., for defendant Local 68–68A of the International Union of Operating Engineers.

### OPINION

WORTENDYKE, District Judge:

The plaintiff, a resident of New Jersey, filed a complaint in the Law Division of the Superior Court of New Jersey alleging that he is a refrigeration and heating engineer, and was employed on or about January 13, 1964, by the defendant S. Klein Department Stores, Inc. (hereinafter Klein's), a New York corporation authorized to do business in New Jersey, in the capacity of Chief Engineer at its Woodbridge, New Jersey building. Plaintiff further alleges that, during the period December 1, 1963 to June 30, 1964, Klein's was negotiating a collective bargaining agreement with the defendant, International Union of Operating Engineers (hereinafter Union), an unincorporated labor organization doing business in New Jersey. The agreement was executed by the parties on or about June 30, 1964. Plaintiff further alleges that on May 5, 1964 he elected to become a member of the defendant Union, and that his employment position as Chief Engineer was included within the terms of the collective bargaining agreement, which provided for hourly wages, work shifts, overtime, vacations and holiday pay for that position effective retroactively as of December 1, 1963.

It is the plaintiff's contention that because of the provisions of the collective bargaining agreement between Klein's and the Union, and its retroactive application to him, he became entitled to overtime, holiday and vacation payments which accrued during the period January 13, 1964 through July 10, 1964, but were unpaid. The items of his claim in that respect are stated as follows:

| | |
|---|---|
| 581 hrs. at $7.50 | $4,357.50 |
| Holiday pay (Memorial and Independence Day) | 80.16 |
| One week vacation pay | 200.40 |
| Total | $4,638.06 |

The complaint alleges that plaintiff made claim to the employer for the foregoing amount through the Shop Steward of the Union, but that the employer neglected and refused to pay said amount or any part thereof. Plaintiff further alleges that on or about July 7, 1964, he was informed by his employer that his

employment was to be terminated effective July 10, 1964. He contends that such termination was without just cause, but by reason of his election to join and become represented by the Union. Plaintiff avers that he made requests to the Union to process his claim for back pay in accordance with the grievance procedures provided for in the collective bargaining agreement, but that the Union failed to comply or to give the plaintiff any information concerning his claims which his employer refused to consider. Plaintiff contends, therefore, that his employer and his Union have failed to follow the procedures relating to grievances provided for in the collective bargaining agreement. Accordingly, he seeks recovery of the amount of $4638.06, representing back pay, as damages for wrongful discharge from his employment and punitive damages for the Union's willful refusal to process his claims as grievances in accordance with the collective bargaining agreement. The action was removed by the employer to this Court upon the ground that exclusive subject-matter jurisdiction resided in this Court pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 (a). The defendant Union answered in this Court, denying, *inter alia,* that plaintiff's employment position was covered by the collective bargaining agreement, but admitting that "Klein's and the Union agreed to amend the said agreement, to include the position of Chief Engineer and to fix his wage rate, but not retroactively to the date of the aforesaid agreement." Therefore, the Union denies that the plaintiff became entitled to the amount claimed in the complaint. It also denies that the termination of plaintiff's employment was due to his election to join the Union, that the Union refused to process the plaintiff's claim, and that the Union failed and refused to pursue the grievance procedures in plaintiff's behalf as set forth in the collective bargaining agreement.

As a separate defense, the Union pleads that plaintiff's claim for damages has been "preempted to the National Labor Relations Board by the Labor Management Relations Act of 1947, as amended, and especially by Section 8(a) (3) thereof." Accordingly, it is the contention of the defendant Union that this Court lacks jurisdiction of the cause of action asserted by the plaintiff against the Union herein. The Union also contended, at the pretrial conference, that the plaintiff had failed to exhaust his remedies under the collective bargaining agreement or under the Constitution of the International Union of Operating Engineers, of which the defendant Union is an affiliate.

The case was tried to the Court, without a jury, on May 25 and 26, 1967. At the conclusion of the trial, the Court reserved decision with leave to the parties to submit post-trial written arguments in lieu of oral summations. While the Court was awaiting the receipt of such post-trial memoranda, there was filed in the cause a stipulation between the plaintiff and Klein's reciting that the matters in difference between those parties had been amicably adjusted by and between them and that the case should be dismissed as to them, without costs and with prejudice. The Court has now been advised that in consideration of $2250, paid by Klein's to the plaintiff, the latter has released and discharged Klein's of "any and all claims relating to or arising from plaintiff's employment by S. Klein Department Stores, Inc. during 1964 and including, but not limited to, the claim incorporated in the—instant lawsuit." That release is in writing, signed and acknowledged by the plaintiff on June 21, 1967. Consequently, there presently persists no cause of action in favor of plaintiff against Klein's, and judgment of dismissal of the complaint as to that defendant will be entered, without costs, in accordance with the stipulation between those parties. We proceed to consider the issues remaining between the plaintiff and the Union.

Of the issues presented by plaintiff at pretrial conference all but one related to plaintiff's claims against his employer. They have been released and thus be-

come moot. Plaintiff nevertheless still seeks "damages against the Union for $4,638.06,—with interest from July 10, 1967." His claim for punitive damages has apparently been abandoned. In any event, as in Vaca v. Sipes, 386 U.S. 171, 194, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967), "There was no evidence that any Union officer was personally hostile to [plaintiff] or that the Union acted at any time other than in good faith." The evidence fails to support his right to recover any damages from the Union.

■ The Union's plea that the claim of the plaintiff for damages "has been pre-empted to the National Labor Relations Board by the Labor Management Relations Act of 1947, as amended, and especially by Section 8(a) (3) thereof", and that therefore this Court lacks subject-matter jurisdiction in this case, may not be sustained. The plaintiff, if he had been wrongfully discharged by his employer, could bring an action against his employer.

"[I]n the face of a defense based upon the failure to exhaust contractual remedies, provided the employer can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. * * * [t]he employee's suit against the employer, * * *, remains a § 301 suit, and the jurisdiction of the courts is no more destroyed by the fact that the employee, as part and parcel of his § 301 action, finds it necessary to prove an unfair labor practice by the union, than it is by the fact that the suit may involve an unfair labor practice by the employer himself. * * * And if, to facilitate his case, the employee joins the union as a defendant, the situation is not substantially changed. The action is still a § 301 suit, and the jurisdiction of the courts is not pre-empted under the Garmon [San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775] principle. * * * And, insofar as adjudication of the union's breach of duty is concerned, the result should be no different if the employee, * * * sues the employer and the union in separate actions. * * * If a breach of duty by the union and a breach of contract by the employer is proven, the court must fashion an appropriate remedy." Vaca v. Sipes, supra at 186–187, 87 S.Ct. at 914.

This Court had subject-matter jurisdiction of this action when it was removed thereto from the State court. The employee's action against his employer no longer pends; but this Court's jurisdiction over the employee's cause of action against the Union persists.

The written collective bargaining agreement between the Union and Klein's recites that it was made "as of the 1st day of December, 1963." The employees covered thereby included those employed by Klein's at its Woodbridge, New Jersey store as operating engineers, maintenance mechanics and apprentice engineers. The agreement further provided that "during the first six (6) months of employment of any new employee or any employee rehired after a break in service * * *, he shall be regarded as a probationary employee subject to be discharged at the discretion of the company." The plaintiff testified that he was hired by Klein's on or about January 10, 1964 as Chief Engineer, and that his responsibility as such was the maintenance of his employer's building at Woodbridge, New Jersey. He claims to have been hired at a salary of $200 per week exclusive of overtime. His attorney conceded during the trial that the plaintiff could be discharged at the discretion of his employer at any time. Accordingly, the termination of plaintiff's employment by his employer on July 10, 1964 was within six months of the commencement of his employment, and therefore such termination constituted no contract violation on the part of his employer.

Article IV of the collective bargaining agreement defines a grievance, as the term is used therein, "as any difference of opinion between the Company and the employees covered by this Agreement as

to any matter involving the interpretation, application, or violation of this Agreement. Both the Company and the Union may initiate and resort to the use of the established grievance procedure as hereinafter provided. Such grievances may be instituted by either the Company or the Union through any of the appropriate steps provided for in the grievance procedure preceding arbitration."

The same Article provides four (4) steps in the grievance procedure. The first step is described as follows:

"Any employee believing that he has suffered a grievance and who shall be unable to adjust it with his immediate supervisor may have it presented by his Shop Steward to his immediate supervisor for adjustment within five (5) working days after the occurrence of the event giving rise to the grievance."

Step 2 is described as follows:

"If the grievance shall not be adjusted within twenty-four (24) hours after having been presented to the immediate supervisor under Step 1, it may be referred to the department head by the business representative of the Union."

The collective bargaining agreement was extended for a period of three (3) years, to May 31, 1967, by a supplemental agreement between the same parties. That supplementary agreement prescribed hourly wage rates for the chief operating engineers, operating engineers, maintenance mechanics and apprentice engineers. In the form of a letter dated June 5, 1964 and signed by an official of the employer and by the business manager of the Union, it was provided that the minimum hourly wage rate for Chief Operating Engineers should be $5.01 per hour.

On May 7, 1964 plaintiff became a member of Local Union 68–68A. On July 7, 1964 plaintiff was advised by his employer's appropriate representative that his employment would be terminated July 10, 1964 because of a reduction in the budgeted allowance for the position which he occupied. On July 10, 1964, before leaving his employment, the plaintiff submitted to the Shop Steward of his Union local, with the request that it be presented as a grievance, a typewritten statement, compiled by plaintiff, of monies alleged to be due to him for overtime, holiday and vacation pay, totalling $4638.06. As drafted by the plaintiff, that document purported to be addressed to his employer's "Personnel Dept. from J. O'Donnell Shop Steward Subject: Retroactive Pay", with "John O'Donnell Shop Steward" typed at the foot thereof; but the original, as presented to the employer's representative had all reference to the Shop Steward deleted therefrom.

On July 7, 1964 plaintiff testified that he was informed, by the Manager of the Personnel Department of his employer, that he was "being terminated from * * * [his] position effective July 10, 1964, because of a reduction in allowances of the position that * * * [he] held. Consequently, because of that, they could no longer maintain me on the payroll. Secondly, he maintained that that because of my inclusion in the union contract, that I could not be carried on the store payroll, where I was originally carried on the New York payroll, that this money couldn't be taken out of the store payroll, and that was the reason for my termination." John O'Donnell, the Union Shop Steward, was present at this conversation between plaintiff and the personnel manager. He testified that he notified Nash, the office manager of the Union, that plaintiff "was being terminated." On July 10, 1964, when plaintiff submitted to the Shop Steward the figures constituting his claim for back pay, the Steward embodied them in a typed "grievance" which was submitted to a clerk in the office of the employer's personnel department. A copy was retained by the plaintiff. Upon the original document, which was placed in evidence with the copy, the typed name of the Steward had been "Xed" out. Plaintiff testified that the "grievance" document was presented to the employer and

to the Union. No response was received from the Union, and plaintiff determined to collect from the employer by litigation. This suit resulted.

■ Upon the plaintiff's own testimony, I find that he has failed to make out a cause of action for relief against the defendant Union. His complaint sets forth a single cause of action against the defendants Klein's and Local jointly. He makes a single claim for overtime, holiday and vacation pay in a lump sum against both defendants. He has settled that claim with his employer for $2250. He may not recover from the Union what he has collected from the employer. Neither at the pretrial conference nor in his trial brief in this case did plaintiff make any contention that he suffered damage by reason of the Union's failure to process his back pay claim as a grievance. In his post-trial memorandum, received by the Court on October 10, 1967, plaintiff makes no reference to the fact that he had then already compromised and settled his claims against his employer, or that his causes of action against the employer had been dismissed with prejudice. Nevertheless, he presently persists in contending that he "is entitled to damages against the Union in the amount of $4638.06." The evidence is barren of any support for such a contention. An award against a union may not include damages attributable solely to the employer's breach of contract. Vaca v. Sipes, supra, at p. 197, 87 S.Ct. at p. 920. "Though the union has violated a statutory duty in failing to press the grievance, it is the employer's unrelated breach of contract which triggered the controversy and which caused this portion of the employee's damages. * * * [D]amages attributable solely to the employer's breach of contract should not be charged to the union, * * *." Ibid.

■ There is no evidence in the case that the plaintiff requested or expected the Union to process his *discharge* by way of the grievance procedure. Indeed, there is ample evidence not only that the employer had the right, under the terms of the collective bargaining agreement, to discharge the plaintiff from his employment at any time; but plaintiff accepted the termination of his employment when it became effective on July 10, and thereafter applied to the Union from time to time only for new employment elsewhere. The evidence is persuasive that although the Shop Steward did type-up a form of back pay claim for the plaintiff, the name of the Shop Steward was effaced therefrom by someone, either before or after it was presented to a representative of the employer. Although the Shop Steward and the plaintiff, from time to time after the back pay claim was compiled, sought to communicate with the Business Agent of the Union with respect to the processing of the claim, there is no evidence whatsoever that the Business Agent, who had the authority to determine whether the claim was entitled to be processed as a grievance, ever received a request either from the plaintiff or from the Shop Steward for such processing. As far as the evidence goes, therefore, it fails to support an inference either that the Union refused to make available to the plaintiff the grievance procedure with respect to his back pay claim, or that the employer and the Union conspired to deny to the plaintiff the benefits of such procedure. There is, moreover, a complete absence of evidence that, if the Union had undertaken the grievance procedure with respect to the plaintiff's back pay claim, he would have received the amount or any part thereof. Plaintiff's conduct, after the termination of his employment became effective, in seeking from the Union only an opportunity for reemployment elsewhere, estops the plaintiff from contending that if the Union had undertaken, and in good faith pursued, a grievance procedure respecting the plaintiff's back pay claim, he would have received any specific amount of money or would have secured reinstatement by the employer. Thus the conceded failure of the Union to institute and prosecute a grievance procedure in support of plaintiff's back pay claim has

not been shown to entitle the plaintiff to compensatory damage from the Union. He has compromised his claim against the employer. He has failed to show any evidence that the Union maliciously or in bad faith caused or induced, or conspired with his employer to cause or induce, the employer's refusal to honor the back pay claim which the plaintiff has since compromised. Plaintiff may not be heard to contend that the conduct of the Union, as disclosed by the evidence in this case, amounted to an unfair labor practice affording jurisdiction to the National Labor Relations Board. The plaintiff sought this forum and predicated this Court's jurisdiction upon Section 301(a) of the Labor Management Relations Act.

For the reasons and upon the facts above-stated and found, I conclude that defendant Local 68–68A of the International Union of Operating Engineers is entitled to judgment dismissing the complaint herein with prejudice and with costs.

Let an Order in conformity with the foregoing Opinion be presented.