**Daniel C. DERR, Jr., Plaintiff,**

**v.**

**Herbert C. BRIGHT, Walter R. Elmes, Lewis L. Fisher, Paul Regopoulos, Omer Enterline, James Heiser, Alfred Byrd and Frank P. Mazol, Defendants.**

**Civ. No. 68–322.**

United States District Court M. D. Pennsylvania.

Feb. 26, 1969.

Peter Krehel, Sunbury, Pa., for plaintiff.

Handler, Gerber & Widmer, Harrisburg, Pa., for defendants.

## OPINION

SHERIDAN, Chief Judge.

This is a motion by defendants to dismiss the complaint.

Plaintiff, Daniel C. Derr, Jr., a rank and file member of Local Union No. 764, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a voluntary labor organization having its principal place of business in Milton, Pennsylvania, brought this action in the Court of Common Pleas of Northumberland County, Pennsylvania, against defendants who are officers and agents of the Union. Upon petition by the defendants, the action was removed to this court. Original and, therefore, removal jurisdiction of this court was invoked under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185.[1] Plaintiff alleges that: he is a member in good standing in the Union; defendant, Frank P. Mazol, the business agent, occupies a position of trust with relation to the Union and its membership and is under a duty to act for the benefit of the Union members; Mazol violated this trust and the Union constitution by permitting plaintiff's employer, New Penn Motor Express, Inc., to post bids, in violation of a collective bargaining agreement existing between the Union and New Penn, resulting in a decrease in wages for plaintiff; plaintiff filed charges against Mazol with the Executive Board of the Local Union; the Executive Board which consists of the other defendants in this action, condoned Mazol's actions; and as a result of the illegal bids, which were subsequently retracted, plaintiff lost $900 in wages. Judgment for that amount, together with interest, is demanded.

While the complaint is unclear, it appears from the allegations and exhibits that the posting of the bids was resisted by Charles Greenwalt, a Union member, in a grievance proceeding brought pursuant to the collective bargaining agreement to No. R–10–67–2 against New Penn. The Central Pennsylvania Motor Carriers Grievance Committee ruled against Greenwalt. Thereafter, in accordance with that decision, Mazol agreed to the posting of the bids. Plaintiff brought charges against Mazol, and the Executive Board rendered a 6–1 decision in favor of Mazol. In so doing, the board noted that the Union was not in agreement with the committee's decision, but concluded that the charges against Mazol were without merit because he had acted in accordance with

---

1. Plaintiff did not move to remand, apparently agreeing that his claim falls within the purview of the Act.

the committee's decision. Plaintiff then brought this action against Mazol *and* the members of the Executive Board.

Defendants argue that the motion should be dismissed for failure of plaintiff to exhaust Union remedies. Defendants attached to their brief a copy of certain pages of the Union constitution dealing with the trial of local union officers and appeals. Since the entire trial and appellate procedure was not attached, it cannot be determined whether the constitution provides for such matters as mandatory exhaustion of Union remedies, and whether the appellate procedure would afford plaintiff full and adequate remedy. Plaintiff argues that the exhaustion of internal Union remedies is a permissive and not a mandatory procedure. For purposes of this motion, the court will assume that it is mandatory and that appellate procedures afford adequate remedy.

In NLRB v. Industrial Union of Marine Workers, 1968, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706, one Holder filed an accusation with his local union that its president had violated the constitution of the union by causing Holder's employer to discriminate against him because he had engaged in protected union activity with respect to his employment. The local union decided in favor of the president; but Holder did not pursue the intra-union appeals procedure that was available to him. Instead, he filed with the National Labor Relations Board an unfair labor practice charge against his local union on the grounds that the union violated Section 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (1) (A). The unfair labor practice charge was based on the same alleged violations by the president. While Holder's charge was pending before the Board, the local union charged him with a violation of the union's constitution because he had filed his charge with the Board without exhausting internal remedies. After hearing, he was expelled from the union, and the action was affirmed in an appeal to higher union echelons. Plaintiff then filed a second charge with the Board, contending that his expulsion was improper because he had a right to pursue his remedies before the Board without first exhausting union remedies. The Board agreed, and issued a remedial order. The Court of Appeals refused to enforce it and held that while the union could not expel a member because he filed an unfair labor practice charge, it did have the right to enact rules which gave the union "a fair opportunity to correct its own wrong before the injured member should have recourse to the Board." [2] The Supreme Court reversed:

"The main issue in the case is whether Holder could be expelled for filing the charge with the Board without first having exhausted 'all remedies and appeals within the Union' as provided in § 5 of Article V of the constitution, already quoted.

" * * *

"In the present case a whole complex of public policy issues was raised by Holder's *original charge*. It implicated not only the union but the employer. The employer might also have been made a party and comprehensive and coordinated remedies provided. Those issues cannot be fully explored in an internal union proceeding. There cannot be any justification to make the public processes wait until the union member exhausts internal procedures plainly inadequate to deal with all phases of the *complex problem concerning employer, union, and employee member*. If the member becomes exhausted, instead of the remedies, the issues of public policy are never reached and an airing of the grievance never had. The Court of Appeals recognized that this might be the consequence and said that resort to an intra-union remedy would not be required if it 'would impose unreasonable delay or hardship upon the complainant.' 379 F.2d at 707.

---

**2.** Industrial Union of Marine Workers v. NLRB, 3 Cir. 1967, 379 F.2d 702.

"The difficulty is that a member would have to guess what a court ultimately would hold. If he guessed wrong and filed the charge with the Board without exhausting internal union procedures, he would have no recourse against the discipline of the union. That risk alone is likely to chill the exercise of a member's right to a Board remedy and induce him to forgo his grievance or pursue a futile union procedure. That is the judgment of the Board; and we think it comports with the policy of the Act. * * *

"The Court of Appeals found support for its contrary position in § 101 (a) (4) of the Labor-Management Reporting and Disclosure Act of 1959. 73 Stat. 522, 29 U.S.C. § 411(a) (4). While that provision prohibits a union from limiting the right of a member to institute an action in any court or in a proceeding before any administrative agency, it provides that a member 'may be required to exhaust reasonable hearing procedures' 'not to exceed a four-month lapse of time.'

"We conclude that 'may be required' is not a grant of authority to unions more firmly to police their members but a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union. We read it, in other words, as installing in this labor field a regime comparable to that which prevails in other areas of law before the federal courts, which often stay their hands while a litigant seeks administrative relief before the appropriate agency.
" * * *

"We conclude that unions were authorized to have hearing procedures for processing grievances of members, provided those procedures did not con-

sume more than four months of time; *but that a court or agency might consider whether a particular procedure was 'reasonable' and entertain the complaint even though those procedures had not been 'exhausted.' We also conclude, for reasons stated earlier in this opinion, that where the complaint or grievance does not concern an internal union matter, but touches a part of the public domain covered by the Act, failure to resort to any intra-union grievance procedure is not ground for expulsion from a union. We hold that the Board properly entertained the complaint of Holder and that its order should be enforced.*" (Footnotes omitted. Emphasis supplied.)

■ This reasoning applies to the instant case. The complaint charges that Mazol and the members of the Executive Board acquiesced in the action resulting in the reduction of pay. It charges that the action of the employer in reducing the pay was contrary to the collective bargaining agreement. In his brief, plaintiff represents that the Union did nothing in the action brought by Greenwalt, and then attempts to rely on the decision rendered therein for justification of its action. The breach of fiduciary duty alleged on the part of Mazol and acquiesced in by the Executive Board is a 'complex problem concerning employer, union, and employee member." Plaintiff was not required to exhaust Union remedies before resorting to his action.[3]

■ Defendants argue that the complaint should be dismissed for failure of plaintiff to exhaust his contractual remedies. They rely on the following statement in Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842:

" * * * [I]t is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bar-

---

3. Defendants have not argued the question of whether administrative remedies must be exhausted before resort can be had to the courts. See Dessingue v. S. Klein Dept. Stores, Inc., D.N.J.1967, 275 F. Supp. 272; Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842.

gaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650 [85 S. Ct. 614, 13 L.Ed.2d 580]."

Defendants omit reference to the language which immediately follows the quoted statement.

"However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures.

" * * * *

"We think that * * * [one] situation when the employee may seek judicial enforcement of his contractual rights arises if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance. It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do

we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements. Cf. Richardson v. Texas & N. O. R. Co., 242 F.2d 230, 235–236 (C.A. 5th Cir.)."

Such is the case here. Plaintiff has alleged that defendants acquiesced in the employer's wrongful action, and argues that defendants did nothing to assist Greenwalt in his attempt to rectify the situation. Plaintiff was not required to use the collective bargaining agreement grievance machinery.

■ The foregoing has assumed that the complaint properly states a claim. Defendants argue that the complaint fails to state a claim upon which relief can be granted because it incorporates a document which includes a statement that both Mazol and the Executive Board acted in accordance with a final and binding arbitration award rendered in the Greenwalt case. Defendants apparently believe that this shows good faith action on their part, and plaintiff's recognition that they so acted. A fair reading of the complaint indicates that the gravamen is Mazol's breach of duty in permitting the employer to breach the collective bargaining agreement and the Executive Board's acquiescence in Mazol's actions. There is no indication that by attaching the document to the complaint plaintiff recognized any good faith action of defendants. Rather, it merely indicated the disposition of his charges against Mazol. Moreover, plaintiff does not deny that a binding award exists or that defendants acted in accordance with it; he claims it is a sham. However, while this is not a recognition of defendants' good faith action, there is another problem. Plaintiff has alleged a breach of fiduciary duty in permitting the employer to breach the collective bargaining agreement. Nowhere in the complaint is it alleged that defendants acted in bad faith. A breach of duty of fair representation through lack of good faith, improper motive or hostile

discrimination are essential elements to be alleged in an action under Section 301 of the Labor Management Relations Act. These have not been properly pleaded. Vaca v. Sipes, 1967, 386 U.S. 171, 87 S. Ct. 903; Hardcastle v. Western Greyhound Lines, 9 Cir. 1962, 303 F.2d 182; cf. Gainey v. Brotherhood of Railway and Steamship Clerks, 3 Cir. 1963, 313 F.2d 318. As stated in Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 338, 73 S. Ct. 681, 686, 97 L.Ed. 1048, "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, *subject always* to complete good faith and honesty of purpose in the exercise of its discretion." (Emphasis supplied.)

Plaintiff will be allowed to file an amended complaint, failing which the action will be dismissed. On the assumption that plaintiff will file a complaint which states a claim, defendants' other arguments will be considered.

■ Plaintiff argues that the arbitrator's decision in the Greenwalt case has been given judicial approval because it came before this court, and summary judgment was entered against Greenwalt. The dispute in that case arose by reason of Greenwalt's failure to perform a work assignment, and he was removed from the seniority list. The dispute was arbitrated. Summary judgment was entered because the collective bargaining agreement provided for finality of decision of the arbitrators.[4] There is no indication that the court passed on the issue of bad faith in the breach of duty on the part of the Union officials. Fuller v. Highway Truck Drivers & Helpers Local 107, E.D.Pa. 1964, 233 F.Supp. 115.

■ Finally, the defendants contend that the complaint should be dismissed for failure of plaintiff to join New Penn, plaintiff's employer, as an indispensable party. Defendants argue that plaintiff's wage loss stems initially from the employer's action under the contract and only secondarily from any failure of defendants to make the employer comply with the contract. Kress v. Local 776, Brotherhood of Teamsters, M.D.Pa. 1967, 42 F.R.D. 643, cited by defendants, clearly supports this argument. In Vaca v. Sipes, supra, the Court, while noting that the suit against the union is properly joined with a suit against the employer, upheld the jurisdiction of the court even though only the union was sued. It noted, however, that:

" *. * * Though the union has violated a statutory duty in failing to press the grievance, it is the employer's unrelated breach of contract which triggered the controversy and which caused this portion of the employee's damages. The employee should have no difficulty recovering these damages from the employer, who cannot, as we have explained, hide behind the union's wrongful failure to act; in fact, the employer may be (and probably should be) joined as a defendant in the fair representation suit, as in Humphrey v. Moore [375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370], supra. It could be a real hardship on the union to pay these damages, even if the union were given a right of indemnification against the employer. With the employee assured of direct recovery from the employer, we see no merit in requiring the union to pay the employer's share of the damages.

"The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases

---

4. Greenwalt v. New Penn Motor Express, Inc., M.D.Pa.1968, 296 F.Supp. 1117

(Memorandum decision of Judge Frederick V. Follmer, June 6, 1968).

if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer. * * *" (Footnote omitted.)

Cf. Dessingue v. S. Klein Dept. Stores, Inc., D.N.J.1967, 275 F.Supp. 272. New Penn is located in Milton, Pennsylvania, within this district, and is subject to service of process. It should be joined as a party defendant.

The defendants have not raised any question with respect to the failure of plaintiff to sue the Union.[5] The Union should be joined also as a party defendant. Cf. Falsetti v. Local 2026, UMW, 3 Cir. 1966, 355 F.2d 658; Chasis v. Progress Mfg. Co., E.D.Pa. 1966, 256 F.Supp. 747. The Union is located within this district and its joinder will not deprive this court of jurisdiction.

An appropriate order will be entered allowing plaintiff twenty days to amend his complaint and join New Penn and the Union as defendants.

---

5. Neither have defendants raised any question with respect to their joinder as individuals, which would seem to be improper in an action brought pursuant to Section 301. Wilson & Co. v. United Packinghouse Workers, N.D. Iowa 1960, 181 F. Supp. 809, 824.