**NORTHWEST AIRLINES, INC.,**
Plaintiff,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO** and its Northwest District Lodge No. 143, Elton Barstad and Lowell J. Heinemann, individually and as officers or representatives of said International Association of Machinists and Aerospace Workers, AFL-CIO and said Northwest District Lodge No. 143, Defendants.

No. 4-70 Civ. 398.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 13, 1970.

Dorsey, Marquart, Windhorst, West & Halladay by Henry Halladay and David Ranheim, Minneapolis, Minn., for plaintiff.

Peterson, Bell & Converse by Erwin A. Peterson, St. Paul, Minn., with Plato E. Papps, Gen. Counsel, Machinists Union, Washington, D. C., for defendants.

Hvass, Weisman, King & Allen by Si Weisman and Reed MacKenzie, Minneapolis, Minn., with Highsaw & Mahoney by William Mahoney, Washington, D. C., for the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes (BRAC).

NEVILLE, District Judge.

Before the court is a motion of Northwest Airlines, Inc. (NW) seeking a preliminary injunction against the International Association of Machinists and Aerospace Workers (IAM), its local lodge and two of IAM's principal officers. NW asserts that the defendants and the members of IAM who are NW employees illegally and in violation of the existing collective bargaining agreement are by joint and collective action, constituting in effect a strike, refusing to return to work and are being instructed, threatened and induced so to do by IAM officials, with the intent and deliberate purpose to support a strike against the same employer, NW, by a sister union, Brotherhood of Railway, Airline and Steamship Clerks (BRAC). The IAM labor contract with NW, effective as of January 1, 1969 does not expire until January 1, 1972 and contains a conventional "no strike" clause. NW contends defendants are in violation of such clause and mandatorily should be enjoined and required to cross BRAC picket lines to return to work when and as so notified by their employer, NW. Defendants contend that on the present state of the record and under the particular circumstances of the case, they are not acting illegally and plaintiff's petition thus should be denied. In any event, defendants claim that refusing to cross the BRAC picket lines is not a vio-

lation of the collective bargaining agreement and the "no strike" clause.

The court finds the facts to be largely undisputed. Plaintiff, NW is a Minnesota corporation with its principal office and place of business in Hennepin County, Minnesota, and is a common carrier by air engaged in interstate commerce within and subject to the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 through 188 (except § 153). Defendant IAM is a labor union having several thousand members. It has been authorized for collective bargaining purposes to represent several classes of NW employees, including Mechanics and Related Personnel, Flight Kitchen Personnel, Plant Protection Employees and others. IAM conducts its negotiations and business with NW through defendant Northwest District Lodge No. 143 which negotiates and administers collective bargaining contracts with plaintiff concerning the aforesaid crafts or classes of employees. Defendant Lowell Heinemann is President and General Chairman of District Lodge No. 143 and defendant Elton Barstad is the IAM Grand Lodge Representative.

This court has jurisdiction under the Railway Labor Act, 45 U.S.C. § 151, et seq., and under 28 U.S.C. §§ 1331 and 1337.

NW normally employs in excess of 3,000 Mechanics and Related Personnel, more than 2,000 of whom are situate at NW's main base in Minneapolis, Minnesota. NW and IAM are parties to a collective bargaining agreement which provides detailed machinery for the handling of grievances and provides in Article XXV(K) the so-called "no strike" clause:

"It is understood and agreed that the Company will not lock out any employee covered hereby and the Union will not authorize or take part in any strike or picketing of Company premises during the life of this Agreement until the procedures for settling disputes as provided herein and as pro-

vided by the Railway Labor Act have been exhausted."

The Agreement also contains in paragraph II(B) thereof the following provision: "The Union [IAM] agrees all employees covered by this Agreement shall be governed by Company [NW] rules, regulations and orders issued by properly designated authorities of the Company which are not in conflict with the provisions of this agreement * * *."

█ By July 8, 1970, the mediation processes of the Railway Labor Act had been exhausted and the employees represented by BRAC went on strike against NW. Both NW and BRAC were and still are free to engage in self-help in connection with what is known as a "major dispute", i. e., a dispute growing out of collective bargaining negotiations looking to the formation or modification of a collective bargaining agreement and involving rates of pay, working conditions, etc. As a part of the strike action of BRAC and the employees it represents, pickets and banners have been present at NW's facilities in Minnesota and elsewhere since the strike commenced. Notwithstanding such strike, however, at all times since the BRAC strike began NW has continued to operate on a limited basis and has had work available for employees represented by the defendant IAM. Neither the legality nor the merits of the BRAC strike are before the court in this case.

Upon the commencement of the BRAC strike, NW laid off some 3,500 (more or less) IAM employees. It is clear that prior to July 8, 1970 the date of the BRAC strike, IAM had been solicited by BRAC, and its officers had agreed, to support the BRAC strike and not to cross its picket lines. NW claims and the fact is that at the time it made the 3,500 IAM layoffs it had knowledge of the fact that IAM was supporting the BRAC strike and that on July 8th, IAM members reporting at their job sites refused to go to work for this very reason. July 18, 1970, ten days after the BRAC strike, NW commenced sending notices to various IAM members to re-port for work, notifying in all some 763 such employees. Something less than 100 IAM members reported for work at NW's main base in Minneapolis and some 121 others reported for work elsewhere across the entire system. NW had work for at least 500. New York IAM employees apparently have remained on the job at all times and are not included in the above figures. It is clear that IAM through numerous bulletins and otherwise advised its members not to return to work and that in one instance where an IAM local lodge refused to obey such instructions, its officers were suspended and IAM took over its affairs and made charges of insubordination. IAM's action to induce its members not to cross BRAC picket lines has been deliberate and purposeful and not the result of inadvertence or oversight. IAM has, however, complied with NW's request to furnish boiler operators, personnel for the handling of military flights and a number of plant protection employees.

There is little question in this court's mind but what NW is suffering a serious gross loss of revenue, claimed by NW to be $1,000,000 per day, due to its greatly reduced operations, though to the date of hearing it had received some $10,000,000 or more from other airlines under a mutual aid pact. No figures were produced as to NW's net profit.

The present action and the attendant motion for preliminary injunction were not instituted until some 2½ months after the commencement of the BRAC strike and the announcement of the IAM overt support thereof. The court therefore has felt justified in keeping the matter under advisement and study for a brief period following argument and final submission on October 7, 1970.

The court has read in an attempt to apply to the facts of this case, a number of prior decisions, including the following: Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); International Ass'n of Machinists et al. v. Northwest Airlines, Inc., 304 F.2d 206

(8th Cir. 1962); Butte, Anaconda & Pacific Ry. v. Brotherhood of Locomotive Firemen and Enginemen, 268 F.2d 54 (9th Cir. 1959); Manion v. Kansas City Terminal Ry., 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed.2d 722 (1957); Brotherhood of R. R. Trainmen etc., v. Chicago River and Indiana R.R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Hilbert v. Pennsylvania R.R. Co., 290 F.2d 881 (7th Cir. 1961); National Airlines, Inc. v. International Ass'n of Machinists & Aerospace Workers, 416 F.2d 998 (5th Cir. 1969). The decided cases are not completely clear and, as this court reads them, not always entirely consistent. They deal in one way or another with the requirements for mediation under the Railway Labor Act. A detailed analysis thereof is not required at this time, however, in view of the basis for the court's decision on the presently pending motion for preliminary injunction.

The situation at bar is somewhat anomalous, for IAM has no direct grievance with its employer NW. In reality it has nothing to submit to mediation under the grievance procedures of the contract and yet by concerted action it is inducing and directing its members not to report for work. It is motivated not by any particular action taken by NW against it nor against any specific employees such as discharge, violation of seniority, etc., but by a desire to give aid to a sister union and thereby in general to strengthen the cause of unionism with or against NW. NW on the other hand asserts that it has a grievance, namely, that some 500 of the 3,500 IAM members whom it desires to call back to work in accordance with and under the labor contract are refusing to cross BRAC picket lines and return. The issue is a "minor" dispute and involves the interpretation and effect of the existing agreement, particularly the "no strike" clause. Indeed the Eighth Circuit Court of Appeals in the case of International Ass'n of Machinists et al. v. Northwest Airlines, Inc., *supra,* resolved the question as to a "major" or

"minor" dispute in this case in favor of a "minor" dispute. That case involved the same two parties as in the case at bar, forms a pattern for the present case and binds this court. There the granting of an injunction by the lower court was reversed and the court held:

"Since plaintiff had not exhausted its administrative remedies at the time it sought the injunction, the court under the Norris-LaGuardia Act was without jurisdiction to grant the injunction."

Undoubtedly mindful of this decision, NW attempted just prior to commencing this action, to make a written submission to the System Board of Adjustment as provided in Article XIII of the Collective Bargaining Agreement. This article creates such a Board and provides for constituting it to hear disputes and grievances after the same have been processed through the several steps provided in Article XII, which envisions proceeding with grievances at various levels from shop steward or local committee through higher company and union officials.

Counsel for NW stated that until I.A. M. v. N.W., *supra,* in 1962 he did not contemplate that the grievance procedures of the labor contract were equally as open to the employer as to the employees, for the wording is cast almost exclusively in terms of employee grievances.

This contention was answered however by the court in I.A.M. v. N.W.:

"It is established that the highest level of management participated in the negotiations to cause the Boiler Operators to cross the picket line to perform their duties and that management before filing of the injunction was aware of the dispute as to the interpretation of the contract. We believe that Article XIII, §§(e) and (g) of the contract gave the plaintiff a right to submit the dispute to the Board of Adjustment established by the contract. Title 45 U.S.C.A. § 184 provides that disputes not adjusted

between the parties at the top level may be referred by the parties or either of them to the appropriate adjustment board. In addition, § 183 provides that either party may invoke the services of the National Mediation Board in any of the following cases:

'(b) Any other dispute not referable to an adjustment board, as hereinafter provided, and not adjusted in conference between the parties, or where conferences are refused.'

Plaintiff's claim that it is without administrative remedy lacks merit." 304 F.2d at 212

This language clearly disposes of one of the defendants' contentions that NW is premature in attempting to act under Article XIII because it has not taken the steps required by Article XII.

█ One of the requirements of Act XIII(G) is that the submission shall include a written statement of:

"1. Question or questions at issue"

NW's submission is guarded and hedged as follows:

"Under ordinary circumstances, NWA would not ask the Board to resolve such a dispute. * * *

This submission does not establish a precedent for the future in respect to the kinds of problems involved in this dispute or any other matters involving application or interpretation of collective bargaining agreements whether the same are similar or dissimilar to the circumstances of this dispute. The company, by the submission of this dispute to this System Board, in no way waives any of its rights or prerogatives in respect to any other dispute or claim arising under the instant or any other collective bargaining agreements."

Incomprehensibly to the court, the issue in the submission is stated as follows:

"1. Does this System Board of Adjustment have jurisdiction to consider this dispute submitted to it by the company in respect to the seniority rights of certain employees under the facts as more fully set forth hereinafter?—and if so,

2. What is the application of Article X(R)* of the collective bargaining agreement (Mechanics and Related Personnel) between NWA and IAM in respect to the persons named in Appendix 1 hereto and what is the status of those persons in respect to employment or non-employment with NWA under the facts of this dispute as hereinafter described?"

This court does not believe that the above constitutes a good submission nor a correct statement of the issues in dispute. The argument is made by NW that at sometime, sooner or later, the strike will be settled and that when it is, the question of the seniority rights of those IAM employees who have continued to work during the BRAC strike and contrary to the IAM instructions and of those employees who were called back but refused to report for work will be raised. From this premise counsel argues that in order to reach and decide the question of seniority of these employees, presumably as sort of a class or classes, it is or will be necessary to decide the legality of the IAM's actions and its rights in taking the concerted action not to cross BRAC picket lines vis-a-vis those of NW and of those employees who have continued to work and refused to report for work. It seems to the court that this is in reality not a submission at all and that since there is in fact no submission, the 1962 case of I.A.M. v. N.W. controls and the injunction must be denied. The submission in effect asks for an advisory opinion on a question that is not in a judicial sense "ripe". Not until someone is denied seniority does a grievance arise. It may well be that the question will become

moot in a final settlement of the strike.[1] In any event, there is as yet no grievance involved affecting anyone's seniority on which the System Board could pass. The issue here is the "no strike" clause and its effect, not seniority.

In view of the above, the other questions raised such as the effect of the existence of, and later withdrawal by the IAM from, a Policy Agreement dated July 12, 1963; what the Court of Appeals in I.A.M. v. N.W. meant by the language that plaintiff had not "exhausted its administrative remedies"; whether, after all employees were laid off concerted action by IAM inducing and instructing its members not to return to work is a strike within the purview of the "no strike" clause of Article XXV(K) of the collective bargaining agreement; the effect, if any, as a precedent of action taken by a union official in 1961; whether or not NW is sustaining irreparable injury, and other questions raised need not be decided.

■ BRAC counsel appeared at the hearings in this case and moved to intervene in the action. Plaintiff objected. It does not appear to the court that BRAC is entitled to intervene under either Rule 24(a) or 24(b) of the Federal Rules of Civil Procedure, particularly in view of a proposed counterclaim attempted to be asserted for some $2,-000,000 together with a claim as to NW's alleged wrongful act relating to certain union dues check off funds. Such would inject entirely foreign and new matter into the present lawsuit and raise quite different issues. Merely a general interest in the subject matter of the action does not entitle a party to intervene. There is nothing to prevent BRAC's claims being asserted in a separate lawsuit if it so desires, and any decision in this case will not bind BRAC in any event, though it might of course tend to constitute a precedent. This

may augur for an appearance as a friend of the court, but not for intervention. This court always has been lenient in permitting briefs amicus where requested, and might do so here, but does not believe the issue involved between IAM and NW is such as to entitle BRAC to intervene.

This memorandum opinion will serve in lieu of formal findings of fact and conclusions of law as provided under Rule 52 of the Federal Rules of Civil Procedure.

A separate order denying preliminary injunctive relief has been entered. The case will stand for trial on the merits as soon as the court's calendar will permit.

---

1. Although news media releases are not in evidence nor a part of the record in this case, stories in the press indicate that since the argument and submission of this case the parties have had numerous bargaining sessions and have in fact either settled or made substantial progress toward settling the precise issue of seniority and the treatment to be accorded these classes or groups of employees.