**NORTHWEST AIRLINES, INC.,**
Appellant,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO and Its Northwest District Lodge No. 143, Elton Barstad and Lowell J. Heinemann, Individually and as Officers or Representatives of Said International Association of Machinists and Aerospace Workers, AFL–CIO and Said Northwest District Lodge No. 143, Appellees.**

No. 20662.

United States Court of Appeals,
Eighth Circuit.

Nov. 25, 1970.

See also, 8 Cir., 442 F.2d 250.

Henry Halladay, Minneapolis, Minn., for appellant.

Willard L. Converse, St. Paul, Minn., for appellees.

William G. Mahoney, Washington, D. C., for amicus curiae, Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees.

Before VAN OOSTERHOUT, HEANEY and BRIGHT, Circuit Judges.

PER CURIAM.

Northwest Airlines requests this Court to enter an order restraining the IAM from interfering with NWA's effort to require its IAM employees to return to work pending determination of this appeal.

NWA and IAM are parties to a collective bargaining agreement which does not expire until January 1, 1972. The agreement contains the following clause:

"Article XXV(K)  It is understood and agreed that the Company will not lock out any employee covered hereby and the Union will not authorize or take part in any strike or picketing of Company premises during the life of this Agreement until the procedures for settling disputes as provided herein and as provided by the Railway Labor Act have been exhausted."

On July 8, 1970, clerks and other employees of NWA, represented by Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, went on strike against the company and established picket lines at most of NWA's facilities.

On the same day, NWA notified 3,500 IAM-represented employees that they were laid off. Prior to this date, IAM had informed BRAC that it would cooperate with BRAC and that it would recognize the BRAC picket lines.

On July 18, 1970 and thereafter, NWA notified 763 IAM-represented employees to return to work. These employees were recalled in accordance with the seniority provisions of the collective bargaining agreement. Less than one hundred re-

ported to work at NWA's main base in Minneapolis, and approximately 121 others reported for work elsewhere across the entire system.

On September 25, 1970, NWA filed a submission with the NWA–IAM System Board of Adjustment seeking to invoke the jurisdiction of the Board to resolve a dispute concerning the application or interpretation of certain provisions of the collective bargaining agreement between the parties.

The company stated that the questions at issue were:

"1. Does this System Board of Adjustment have jurisdiction to consider this dispute submitted to it by the company in respect to the seniority rights of certain employees under the facts as more fully set forth hereinafter?—and if so,

"2. What is the application of Article X(R)* of the collective bargaining agreement (Mechanics and Related Personnel) between NWA and IAM in respect to the persons named in Appendix 1 hereto and what is the status of those persons in respect to employment or non-employment with NWA under the facts of this dispute as hereinafter described?"

NWA then went on to state that it had notified the persons whose names were set forth in Appendix 1 to return to work, that each employee replied that he would return to work in accordance with the terms of the agreement, but that most of them failed to return because they were directed and coerced by members of IAM not to report to work.

The company took the position that the named employees had an obligation to report for work and work under the terms of the collective bargaining agreement and that their failure to do so "appears to have resulted" in the automatic loss of their seniority. It asked the System Board of Adjustment to answer the questions posed on an expedited basis.

The union took the position that the Board had no jurisdiction.

NWA commenced an action on September 26, 1970, in the United States District Court for the District of Minnesota. It alleged in its complaint that there was a "minor dispute between it and the Union" and that it was seeking to enjoin the union from further interfering with NWA's service to the public and from additional violations of the Railway Labor Act. The substance of its position was that the union had violated various sections of its collective bargaining agreement with the company by encouraging the employees to refrain from reporting to work. NWA requested the court to issue an order requiring the union to notify each of its members as follows:

"To all IAM-represented NWA personnel:

"In accordance with an order of the United States District Court of the District of Minnesota,

"You are hereby notified that the existing contract with NWA requires you to work as scheduled and prohibits you from engaging in a strike or other concerted refusal to perform services for Northwest, and further refusal to report for work when called will amount to a final resignation on your part. No fine or other penalties will be imposed on any IAM member who crosses the BRAC picket line. Any previous statement to the contrary is hereby cancelled. Northwest also requests that the Union be enjoined from authorizing or taking part in any strike or picketing on NWA's premises until the procedures for settling disputes as provided in the agreement and in the Railway Labor Act have been exhausted and for any order temporarily enjoining the defendants from causing IAM-represented employees to refuse to be governed by Company orders to report to work."

On October 22, 1970, NWA and BRAC tentatively arrived at a basis for settlement of the economic issues involved in the dispute. However, as of the date of oral argument, no agreement had been

reached on the back-to-work provisions of a settlement. It also appears that BRAC has interjected a back-to-work agreement for IAM employees into its negotiations with NWA.

On November 12, 1970, the United States District Court for the District of Minnesota denied NWA's motion for preliminary injunction and ordered trial on the merits as soon as the court's calendar would permit. 325 F.Supp. 994.

The court held that NWA's submission was not such as to give the Adjustment Board jurisdiction of the dispute. It denied NWA's request for temporary relief.

In considering whether we should grant injunctive relief we note that there are a number of important questions which must eventually be answered. However, this Court and all parties to the action agree that the single underlying issue is whether IAM, in the light of the no-strike provisions of the bargaining agreement, retains the right to instruct its members to honor the picket lines of a sister union.

We order that this basic issue and others collateral to it be submitted by the parties to the System Adjustment Board without delay. Specifically, we require: (1) That representatives of IAM and NWA meet no later than 11 a. m., Friday, November 27th, for the purpose of selecting the neutral member of the Adjustment Board. This neutral should be one who can and will hear the basic dispute without delay. (2) That failing agreement by 3 p. m. Friday, November 27th, as to a neutral that the parties request the National Mediation Board to appoint a neutral. A copy of this Order and the request to appoint the neutral shall be hand-carried to the appropriate office of the National Mediation Service by representatives of the parties no later than Monday, November 30th. (3) That both parties will request the neutral to set early and continuous hearings to the end that a prompt decision on the basic issue will be rendered. This Court sees no reason why a decision on the basic issue cannot be handed down no later than Friday, December 11th, recognizing that some of the collateral issues will take a longer time to resolve. (4) That a copy of the System Board of Adjustment decision on the basic issue be filed immediately after it is handed down by the moving party with this Court.

We specifically reserve a decision on all other issues, including whether a temporary injunction should be granted pending the decision of the SAB. We also reserve the right to file a further opinion expressing our reasons for issuing this order at this time.

We retain jurisdiction for the purpose of granting such relief as we may find necessary.