**R. J. ADAMSZEWSKI et al.,**
**Plaintiffs-Appellants,**

**v.**

**LOCAL LODGE 1487, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, et al., Defendants-Appellees.**

**No. 73-1166.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1974.

Decided April 12, 1974.

Rehearing Denied June 5, 1974.

Irving G. Swenson, Joseph J. Hasman, Chicago, Ill., for plaintiffs-appellants.

Jacob N. Gross, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, PELL, Circuit Judge, and ESCHBACH, District Judge.*

ESCHBACH, District Judge.

Plaintiffs-appellants have taken this appeal from a decision of the district court denying their motion for summary judgment and dismissing their action without prejudice. Plaintiffs-appellants argue that the district court was in error both in denying their motion and in dismissing the action. We agree with the district court and therefore will affirm.

The facts, as set forth in the district court's memorandum of decision, are not substantially disputed. Plaintiffs-appellants are employees of Northwest Airlines, Inc. (NWA) and members of the International Association of Machinists and Aerospace Workers, AFL–CIO (IAM). Plaintiffs-appellants brought this action against IAM's Local Lodge 1487 and its officers seeking to enjoin union disciplinary proceedings which had been instituted against plaintiffs-appellants for crossing the picket line of a sister union. Plaintiffs-appellants seek to represent themselves and a class consisting of all employees against whom such proceedings have been instituted. A preliminary injunction was issued to delay the disciplinary proceedings during the pendency of this action.

On July 8, 1970, the Brotherhood of Railway and Airline Clerks (BRAC) struck against NWA and established picket lines. Although IAM's collective bargaining agreement with NWA contained a no-strike provision [1], IAM nevertheless instructed its members, who were employees of NWA, not to cross BRAC's picket line. However, NWA ordered its employees back to work and plaintiffs-appellants complied with NWA's order, crossed the BRAC picket line and returned to work. The question of whether, in view of the no-strike provision, IAM had the right to instruct its members not to cross the BRAC picket line was referred to a System Board of Adjustment (SBA) by the Court of Appeals for the Eighth Circuit. Northwest Airlines, Inc. v. Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO, 422 F.2d 244 (8th Cir. 1970). The Board decided on December 14, 1970, that:

IAM, in light of the no-strike provisions of the bargaining agreement does not retain the right to instruct its members to honor the picket lines of a sister Union.

On December 8, 1970, shortly before the SBA handed down its decision, IAM and

---

* District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

1. "It is understood and agreed that the Company will not lock out any employee covered hereby and the Union will not authorize or take part in any strike or picketing of Company premises during the life of this Agreement until the procedures for settling disputes as provided herein and as provided by the Railway Labor Act have been exhausted."
Article XXV, Paragraph (k), Collective Bargaining Agreement between NWA and IAM of January 1, 1969.

NWA negotiated a back to work agreement providing in paragraph VI that:

There will be no reprisals, recriminations, disciplinary actions, grievances or reprimands by either party against any employee represented by IAM because of any action or non-action during or arising from the strike.

Subsequently, despite the agreement of December 8, 1970, the union local notified plaintiffs-appellants that charges had been preferred against them for conduct unbecoming a union member, consisting of crossing the BRAC picket line, and ordered them to appear for trial on those charges. Plaintiffs-appellants thereupon filed this action to enjoin the disciplinary proceedings, relying upon the no-strike provision of the NWA–IAM collective bargaining agreement, the no-reprisal provision of the back to work agreement, and the decision of the System Board of Adjustment.

On January 26, 1972, an order was issued compelling the union and its officers to hold the disciplinary proceedings in abeyance until the final disposition of all issues in this case. The parties subsequently filed reciprocal motions for summary judgment. On December 14, 1972, the district court entered an order and memorandum of decision denying plaintiffs-appellants' motion for summary judgment and treated the defendants-appellees' motion for summary judgment as a motion to dismiss raising matters in abatement and dismissed the entire action without prejudice to plaintiffs-appellants' right to commence further actions. The basis for the district court's decision was that plaintiffs-appellants had violated the second proviso of Title 29, U.S.C. § 411(a)(4). The parties had previously signed and filed a stipulation with the court to the effect that NWA was financing plaintiffs-appellants' suit. The district court found that NWA was an interested employer within the meaning of the proviso and that the suit could not be maintained by plaintiffs-appellants while financed by NWA.

I.

The first question presented is whether the district court erred in its construction of the second proviso of Title 29, U.S.C. § 411(a)(4), in determining that NWA was an "interested employer." Appellant contends that one of the grounds for relief stated in the complaint is that the guarantee set forth in Title 29, U.S.C. § 411(a)(5), which provides that no union member can be disciplined unless he has been served with written specific charges and given a full hearing after a reasonable time within which to prepare his defense[2], was violated by appellees.

A.

Title 29, U.S.C. § 412, confers original jurisdiction on the district courts to hear controversies involving the guarantee set forth in section 411(a)(5). In order to safeguard the guarantees set out in 29 U.S.C. § 411–415, § 411(a)(4) prohibits labor unions from limiting the rights of their members to institute actions against the unions or their officers.[3] However, the right to bring a

---

2. Safeguards against improper disciplinary action—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given ·a reasonable time to prepare his· defense; (C) afforded a full and fair hearing.

(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect. 29 U.S.C. § 411(a)(5).

3. 29 U.S.C. § 411(a)(4) without its two provisos provides that:

Protection of the right to sue—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any

suit against a union and its officers is qualified by two provisos. The first states:

> *Provided,* That any such member may be required to exhaust reasonable hearing procedures . . . within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof[.]

The district court held that plaintiffs-appellants were not required to exhaust union procedures. The court reasoned that such actions would be futile since no internal union remedies existed which were capable of giving plaintiffs-appellants the relief they were seeking since they sought not merely to prevent possible union punishment but sought to prevent the disciplinary hearings themselves. The appellees have not cross-appealed from the decision of the district court, and therefore the propriety of the decision is not properly before us on review.

## B.

The principal issue in this appeal is whether NWA is an "interested employer" within the meaning of the second proviso of 29 U.S.C. § 411(a)(4). The second proviso states:

> *And provided further,* That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

Appellants argue that although NWA is financing the suit, it gains no legal, financial or business advantage from the suit but is merely asserting a moral responsibility toward its employees who lawfully crossed the BRAC picket line. Appellees in reply argue that NWA is motivated by a desire to lessen the representational strength of IAM as the collective bargaining representative of the NWA employees which IAM repre-

sents. Thus, we must determine what is meant by the term "interested employer" and then decide whether NWA is an "interested employer."

The second proviso of § 411(a)(4) has been construed in Farowitz v. Associated Musicians of Greater New York, 241 F. Supp. 895 (S.D.N.Y.1965). That court determined that the proviso must be strictly construed and that the language must be given a construction as consistent as possible with the policy of the statute to guarantee the right of union members to sue the union. The court decided that the employers, despite the fact that they had financed several suits against the union, were not "interested" within the meaning of the statute. The court stated that what was at stake was the plaintiff's livelihood as a musician and that the incidental propaganda benefit which would accrue to the employers did not rise to the level of an interest necessary to fall within the proviso.

The court focused on the statement of Representative Griffin regarding the purpose of the second proviso of § 411(a)(4):

> The last proviso in Section 101(a)(4) was added to make sure that the interested employers do not take advantage of rights accorded union members by encouraging or financing harassing suits or proceedings brought by union members against their unions. The purpose of the proviso should be kept in mind and it should not be so narrowly construed as to impose unnecessary or unintended restrictions upon employers in relationship with their employees.

Cong.Rec.App. A 7915 (Sept. 10, 1959). It is a fair reading of the *Farowitz* opinion to say that the court narrowly construed the word "interested" and decided that in the context of the facts before it the employer was not "interested" and the suit was not a harassing suit.

---

member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any leg-

islature or to communicate with any legislator. . . .

The instant action is distinguishable from *Farowitz* as the district court correctly noted. Farowitz had been expelled from the union for publishing a bulletin contending that taxes imposed by the union on members were illegal. The dispute was clearly one solely between the union and its ex-member. Farowitz merely sought reinstatement in the union and damages. The question of the legality of the taxes imposed by the union was the subject of other suits in which the employers in question were parties. The instant action, although principally a dispute between the union and some of its members, has far greater implications. It involves not only questions relating to the no-strike provision of the collective bargaining agreement and an interpretation of that agreement by the System Adjustment Board, but also involves the back to work agreement between NWA and IAM to which the appellants claim to be beneficiaries. The instant action is not as limited in scope as *Farowitz* which involved one union member's right to express his views of union policies. The instant action, arising out of a prior dispute between NWA, BRAC and IAM necessarily has greater implications in the area of labor-management relations in the airline industry. Certainly, if the union can enter a back to work agreement with the employer after a walkout and then proceed either to interpret its provisions as the union wishes or openly flaunt its provisions, the employer must necessarily be concerned. The entire posture of present and future labor-management relations must be affected.

Similarly, the employer stands to gain when it enters an agreement with provisions beneficial to a group of employees represented by the union but who have adhered to a position adverse to that taken by the union. A potential for creating divisions within the union, which may weaken the union's future bargaining power, can be gained by the employer, providing it can enforce the agreement. Obviously, all these considerations put the instant action in an entirely different posture than the *Farowitz* facts.[4]

Certainly, the *Farowitz* court was correct when it decided that the second proviso of § 411(a)(4) is meant to prevent harassing suits, but that is not its only purpose. In the original bill of rights (of labor organization members) amendment of Senator McClellan, § 101(a)(4) [codified after enactment as 29 U.S.C. § 411(a)(4)] did not contain the second proviso. 105 Congressional Record 6475 (1959). The second proviso was added in the so-called Kuchel amendment and did not contain the word "interested." The Kuchel amendment provided:

> That no employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

105 Congressional Record 6693 (1959). The word "interested" was later added during the course of debate on the amendment and after the Senate had expressly stated that it was creating "legislative history" in regard to the reason for its insertion. Senator Goldwater

---

4. In *Farowitz* the employers were involved as parties in several suits attacking the union tax. NWA has brought suit as party plaintiff seeking to enjoin the union from instructing its members to honor the picket lines and was unsuccessful. *See* Northwest Airlines, Inc. v. Int'l Ass'n of Machinists and Aerospace Workers, 323 F.Supp. 107 (D. Minn.1970), on appeal, 442 F.2d 244 (8th Cir. 1970), on remand, 332 F.Supp. 1330 (D.Minn.1971). In Northwest Airlines, Inc. v. Int'l Ass'n of Machinists and Aerospace Workers, 336 F.Supp. 1117 (D.Minn.1972), the court held that NWA did not have standing to seek redress for union members who were disciplined since NWA could not show that it was injured or aggrieved.

NWA is now engaged in financing suits brought by union members against the Union. In light of the prior litigation on its own behalf which was unsuccessful, it would certainly indicate that NWA itself has indicated an interest in the litigation which is not merely an assertion of a "moral responsibility."

These facts also distinguish the instant action from *Farowitz*.

had sought to amend the Kuchel amendment by adding at the end:

> unless such employer has no dispute, controversy, contract, connection or relationship of any kind in any area of activity, with the labor organization against which such action or proceeding has been or is being brought by such member.

105 Congressional Record 6724 (1959). Senator Goldwater was concerned with the fact that under the Kuchel proviso, a neighbor of a union member, who happened to be a businessman, could not finance the union member's suit because such neighbor was "an employer." 105 Congressional Record 6724 (1959). Senator Mundt later added that even a bank was "an employer" so that it could be questioned whether even a bank could lend a union member money to finance a suit without violating the proviso. 105 Congressional Record 6725 (1959). Nevertheless, the sentiment was that Senator Goldwater's proposed amendment went too far. Therefore, Senator Javits suggested that Senator Goldwater's proposed amendment would not be necessary and the problem which he sought to prevent could be avoided by insertion of the word "interested" to make the Kuchel amendment read "no interested employer. – . ." 105 Congressional Record 6725 (1959). Senator Goldwater asked Senator Javits to explain what he meant by "interested."

In the explanation of Senator Javits, it was brought out that the word "interested" was inserted to allow a friend or bank to finance a suit but not an employer who may gain an advantage over the union from such suit. Otherwise, an employer with such an interest could bring undue pressure on the union. 105 Congressional Record 6725 (1959).[5] Subsequently, the Senate voted to accept the proviso, amended to read "any interested employer, . . ." 105 Congressional Record 6727 (1959), and the bill eventually became law in this form. Senator Goldwater in his remarks on the proviso stated:

> . . . the Senate modified the limitation to apply to interested employers only, the legislative history making it clear that employers such as those in the foregoing examples [i. e., banks, friends, or relatives who might also be an employer] were not included in the limitation which would apply only to employers who had a concrete interest in the litigation because of some relationship in the union other than the mere connection with the union member bringing the suit.

■■ From this background of the relevant legislative history, it is clear that Congress meant to prohibit an employer from financing a suit by a union member when the employer had a concrete interest in the litigation due to its relationship with the union. Therefore,

---

5. Mr. GOLDWATER. I understand what it means, but we want to make a legislative history. I want the proponents of this interesting word "interested" to explain it.

I yield to the Senator from New York.

Mr. JAVITS. I have in mind the fact that an employer who has an interest in the litigation ought not to bring pressure upon a union. In the eventuation of a relationship of the litigant to the union, an interested employer should not be a party to finance the suit.

We ourselves are so against antibarratry statutes that I do not want to be a party to a law which would prevent a union member from finding a friend, who happens to be an employer of people in a totally unrelated business, a bank or anything else, to loan him the money. We should not have a law to make it impossible to borrow from a friend to start a suit.

Mr. ALLOTT. May I ask a question, for the legislative history?

Mr. GOLDWATER. I yield.

Mr. ALLOTT. Including the word as the Senator has used it, in the opinion of the Senator would the language include "any" employer? Let me assume that the employer is in the general grocery business. Would the word "interested" include any other employer?

Mr. JAVITS. I think it probably would if the litigation involved the union in the whole line of business, because the words of art are "employer or employer association."

Again we have a balance of convenience. Neither side ought to trim this, and that is why I have given the legislative history.

the district court did not err when it decided that interested meant "having an interest in something; concerned." American College Dictionary 635 (1970). More precisely, interested can be defined as: "having a share or concern in some project; liable to be affected or prejudiced; also having self-interest. . . ." Webster's New Collegiate Dictionary 439 (1960). Having a concrete interest in the litigation means having a share or concern in the litigation, liable to be affected by it. We decide that this is the meaning intended by Congress when it added the word "interested" to the proviso.

Whether an employer is interested in the litigation, that is, whether an employer is concerned with it or is liable to be affected by it or has some self-interest in it, must necessarily be determined in the factual context which gave rise to the litigation. When viewed against the backdrop out of which the dispute between the appellants and their union developed, there is no doubt but that NWA has a concrete interest in the litigation arising out of their relationship with IAM. NWA has an interest in seeing that agreements which they enter into with the union are carried out in good faith by the union. Their future bargaining position will be influenced by a determination of whether the union has violated the no-reprisal agreement or not. Bargaining strategy will be influenced by a knowledge of whether or not the union can be trusted to adhere to its agreements.

■ In addition, the employer stands to gain from any divisiveness within the union which could weaken it at the bargaining table where it would be unable to present a solid front against NWA. Any weakening of the presentational strength of IAM as the exclusive bargaining representative of NWA's employees in the crafts and classes of serv-ice would redound to NWA's benefit at the bargaining table and in its over-all relationship with labor. Appellants argue that no legal, financial or business advantage is gained by NWA from this suit. It is clear that NWA has a practical business interest in the suit and could gain an improvement in its collective bargaining position. The district court committed no error in deciding that the second proviso of § 411(a)(4) had not been complied with and correctly decided that a suit could not be maintained pursuant to § 412.[6]

## II.

Appellants contend that several alternate grounds exist which entitle them to relief which were properly pleaded and are not precluded by 29 U.S.C. § 411(a)(4). They argue that they not only relied on the protection of the Labor Management Reporting and Disclosure Act's fair trial provision but also sought relief under the no-strike provision of the NWA–IAM collective bargaining agreement, the no-reprisal paragraph of the back to work agreement and the decision of the System Board of Adjustment. It is argued that the district court erred in dismissing these alternate causes of action.

## A.

■ We agree with appellants initial contention that the proviso of 29 U.S.C. § 411(a)(4) does not preclude relief sought pursuant to 45 U.S.C. §§ 151–188 of the Railway Labor Act, if otherwise properly brought. Title 29 U.S.C. § 412 grants original jurisdiction in the district courts for any violations of rights granted in 29 U.S.C. §§ 411–415. Section 413 is a saving provision which states that nothing contained in sections 411–415 shall limit the rights and rem-

6. Plaintiffs-appellants argue that the district court erred by failing to order that NWA be joined as a party under Rule 19(a), Fed.R. Civ.P. The district court was correct in its decision. Rule 19(a) clearly is inapplicable.

NWA is not needed for just adjudication and has freely chosen not to participate as a party but merely to finance the action. The court need not disturb NWA's choice.

edies of any union member existing under any other federal law.[7] This section preserves pre-existing federal remedies. Tirino v. Local 164, Bartenders and Hotel and Restaurant Employees Union, 282 F.Supp. 809, 813 (E.D.N.Y.1968). In addition, 29 U.S.C. § 523(b) provides that nothing in sections 401–531 of Title 29 shall supersede or impair the provisions of the Railway Labor Act or the National Labor Relations Act or the rights conferred thereby.[8] Appellants are not therefore precluded by 29 U.S.C. § 411 from pursuing any other remedies properly brought.

■■ Appellants argue that the System Board of Adjustment's award is enforceable in federal court and that the award provides the basis for the relief sought. It is well established that an award of the SBA is entitled to enforcement in the federal courts. Int'l Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67, rehearing denied, 373 U.S. 947, 83 S.Ct. 1533, 10 L.Ed.2d 702 (1963); Buzzard v. Local Lodge 1040 Int'l Ass'n of Machinists & Aerospace Workers, 480 F.2d 35 (9th Cir. 1973). In such a case jurisdiction would exist pursuant to 28 U.S.C. § 1331 or § 1337 provided that the complaint presented a substantial claim arising under the Railway Labor Act, 45 U.S.C. § 151–188. However, the SBA award will not support the relief requested by appellants. The SBA decision expressly stated that the award was not based on any consideration of "matters of discipline . . . of individuals for refusing to cross picket lines of sister unions." Opinion of NWA/IAMAW System Board of Adjustment 5 (1970). Rather, the focus of the SBA was on the no-strike clause and its effect on union conduct. Id. at 2, 4, 5. The issue presented to the SBA by the Court of Appeals for the Eighth Circuit was:

[W]hether IAM, in the light of the no-strike provisions of the bargaining agreement, retains the right to instruct its members to honor the picket lines of a sister union.

Northwest Airlines, Inc. v. Int'l Ass'n of Machinists and Aerospace Workers, 442 F.2d 244, 246 (8th Cir. 1970). The decision reached by the SBA was that IAM did not retain the right to instruct its members to honor the picket lines of a sister union. Opinion of NWA/IAMAW System Board of Adjustment, *supra* at 11. Therefore, the SBA award is limited in scope and it does not give appellants a cause of action to enjoin the disciplinary hearings. Since the injunctive relief sought could not be based on the SBA award, the district court committed no error in dismissing that claim. *Accord,* Buzzard v. Local Lodge 1040 Int'l Ass'n of Machinists and Aerospace Workers, supra, 480 F.2d at 40.[9]

### B.

Appellants assert that the district court had jurisdiction to grant the injunctive relief requested based on the alleged breach of the no-strike provision of the collective bargaining agreement and the no-reprisal provision of the back

---

7. 29 U.S.C. § 413 provides: "Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization."

8. 29 U.S.C. § 523(b) provides: "Nothing contained in this chapter [§§ 401–531] and section 186(a–c) of this title shall be construed to supersede or impair or otherwise affect the provisions of the Railway Labor Act, as amended, or any of the obligations, rights, benefits, privileges, or immunities of any carrier, employee, organization, representative, or person subject thereto; nor shall anything contained in this chapter be construed to confer any rights, privileges, immunities, or defenses upon employers, or to impair or otherwise affect the rights of any person under the National Labor Relations Act, as amended."

9. Apparently *contra* is Verville v. IAMAW (unreported decision of D.C.E.D.Mich., April 25, 1972). However, the court did not discuss the scope of the question presented to the SBA nor express limitation in the Board's award.

to work agreement guidelines. Under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, an employee may sue his employer for breach of a promise contained in the collective bargaining agreement that was intended to confer a benefit upon the individual. Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of America v. Lockridge, 403 U.S. 274, 298–299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473, rehearing denied, 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed. 2d 120 (1971); Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L. Ed.2d 246 (1962). Section 301 also allows a suit by a union member seeking redress from union interference with rights conferred on employees by employer promises in the collective bargaining agreement if the union action constitutes a breach of the duty of fair representation. Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of America v. Lockridge, *supra*, 403 U.S. at 299, 91 S.Ct. at 1924; Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L. Ed.2d 370, rehearing denied, 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964). *See also*, Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). The no-reprisal clause in the back to work agreement is a "contract" cognizable under § 301(a). Retail Clerks Int'l Ass'n v. Lion Dry Goods, 369 U.S. 17, 23–30, 82 S.Ct. 541, 545–549, 7 L.Ed.2d 503 (1962). It has recently been held that § 301 will support a suit by union members against the IAM seeking redress from a refusal of the union to honor the rights conferred on employees by union promises contained in the no-reprisal agreement. Buzzard v. Local Lodge 1040 Int'l Ass'n of Machinists and Aerospace Workers, *supra* at 480 F.2d 40, 41. Arguably, the appellants could have maintained an action under § 301. But we need not decide that point since another ground exists for dismissing this action under any theory based on the no-strike or no-reprisal agreement.

The only relief sought by appellants was an injunction of the disciplinary proceedings. They did not seek any money damages under any of the alternate theories pleaded. It is well established that equitable relief will not be granted when a remedy exists at law which would completely compensate a party for any damages which he may have suffered. *See*, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). To be entitled to injunctive relief a party must show that he has no adequate remedy at law and will suffer irreparable harm unless the injunction issues. Appellants stated in their complaint that there was no adequate legal remedy and that they would suffer irreparable harm if forced to submit to disciplinary proceedings in that their standing as members of IAM and with NWA would be jeopardized. However, such potential harm is completely speculative at this time. None of the appellants has had to undergo disciplinary hearings in this matter. None has been fined, suspended or in any way sanctioned by the union. It is anomalous for appellants to argue that their employment with NWA may be jeopardized when, in fact, NWA is financing this suit. Similarly, it is difficult to see how appellants' position within the union will be jeopardized to any greater extent by requiring them to attend the disciplinary proceedings than it would be by issuing an injunction in their behalf against the holding of such proceedings. This is not to be interpreted that this court sanctions the union's conduct toward these employees, which conduct is questionable at best. The attempt of the union to discipline its members in the face of the no-strike provision, the SBA award and the no-reprisal agreement presents a serious question of the exposure of the union to damages if it should elect to discipline appellants. The *Buzzard* court has already determined that a remedy does exist for disciplined union members for violation of the no-reprisal agreement. Buzzard v. Local Lodge 1040 Int'l Ass'n of Machinists and Aerospace Workers, *supra*. In addition, the decision of the Supreme

Court of the United States in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967) should make it clear to the union that remedies exist for arbitrary conduct toward its members and for breaches of the duty to represent all members without hostility or discrimination toward any. But, in the absence of a showing of irreparable harm or the inadequacy of legal remedies, no injunction can issue.

▮ Appellants have also argued that it is the holding of the disciplinary proceedings themselves in violation of the no-reprisal agreement which wrongs them. Yet, appellants are unable to show that being subjected to disciplinary proceedings will cause them irreparable harm. If it is decided that the union's action was a violation of the collective bargaining agreement or the no-reprisal agreement, any harm suffered by appellants could be adequately compensated by money damages. Cf., Sanders v. Air Line Pilots Ass'n Int'l, 473 F.2d 244 (2nd Cir. 1972).

▮ Appellants admit at page four of their reply brief that fellow union members have a right to complain against them. When a complaint is filed, Article L, Section 7, of the Constitution of the IAMAW provides that the president of the local must proceed to bring the accused member to trial.[10] Appellants are aware of this provision and do not deny that as union members they are bound by it. If the charges brought by members against fellow members are found sufficient by the trial committee, Article L requires a trial. Yet, it is not usually the holding

of this trial which is thought of as "disciplinary" but the sanctions imposed which constitute the discipline. The no-reprisal agreement prohibits the union from taking "disciplinary action" because of a member's conduct during the BRAC strike. It is difficult to see, and appellants have not shown, how holding the disciplinary hearings per se, as distinguished from any punishmment which may be imposed, will cause appellants irreparable harm. Therefore, even if a cause of action can be maintained based on the no-reprisal agreement pursuant to 29 U.S.C. § 185, since only equitable relief was sought and since no basis for that relief was shown, the district court was not in error by dismissing the entire action.

Since the district court dismissed without prejudice, nothing in the decision of that court and nothing in the opinion in this court precludes appellants from bringing an action pursuant to 29 U.S.C. § 412, provided it is not financed by NWA. Appellants also are not precluded from seeking any relief available under 29 U.S.C. § 185.

The decision of the district court in denying plaintiffs-appellants' motion for summary judgment and in dismissing their action is affirmed.

Judgment affirmed.

## ON PETITION FOR REHEARING

This cause is again before the court on plaintiffs-appellants' petition for rehearing. The petition will be denied.

On April 12, 1974, this court affirmed the order of the district court entered on December 14, 1972, dismissing plain-

---

10. Section 7 provides in relevant part:
\* \* \* \* \*
It is the duty of any member who has information as to conduct of a member covered by Sec. 3 of this Art. to immediately prefer charges in writing against such member. . . .
\* \* \* \* \*
In the event that any L.L., or the members thereof fail to proceed as prescribed herein, then any officer or representative, or member may file written charges against such member or members with the I.P. Upon the

receipt of such charges, the I.P. shall . . . [command] said L.L. to proceed to place the accused on trial under the provisions of this Art.
If said L.L. fails or refuses for 15 days thereafter, to proceed as ordered by the I. P., then the I.P. shall notify the accused and the L.L. of which the accused is a member, of the time and place, when and where a special committee will meet for the purpose of hearing evidence and trying the accused. . . .

tiffs-appellants' action without prejudice. The decision affirming the district court was entered after both sides were given ample opportunity to brief and orally argue the merits of their contentions. In their petition for rehearing, plaintiffs-appellants essentially seek to reargue points which have already been decided adversely to them. Once again we find no merit in plaintiffs-appellants' contentions.

One point raised by the petition for rehearing merits some discussion. Plaintiffs-appellants argue that this court based its decision in part on a misunderstanding of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. They argue that any person subject to the Railway Labor Act, 45 U.S.C. § 151 et seq., is exempted from § 301 coverage. However, the nonexistence of a remedy under § 301 does not in any way alter our earlier decision. In our opinion, we stated that:

> *Arguably,* the appellants could have maintained an action under § 301. But *we need not decide that point* since another ground exists for dismissing this action under any theory based on the no-strike or no reprisal agreement. (Emphasis added.)

The other ground upon which the decision was based was that plaintiffs-appellants were not entitled to injunctive relief. Clearly, any arguendo reference to the possibility of a § 301 action in our earlier decision has no bearing on the decision that the suit was not a proper one for injunctive relief. The district court properly dismissed the entire action. Thus, even if plaintiffs-appellants cannot maintain a § 301 action, that ground alone does not entitle them to either a rehearing or a reversal of the district court.

Additionally, it must again be pointed out that the action of the district court in dismissing the action without prejudice does not bar plaintiffs-appellants from seeking future relief. In our earlier opinion, we stated that plaintiffs-appellants were not precluded from bringing an action pursuant to 29 U.S.C. § 412 provided that it was not financed by NWA. Plaintiffs-appellants may also bring a suit financed by NWA if properly brought and if the proviso of 29 U.S.C. § 411(a)(4) is not violated. Nor did the dismissal by the district court bar any other relief under the Railway Labor Act, including any possible suit for breach of the duty of fair representation. In summary, if plaintiffs-appellants are disciplined, they are free to seek damages under any theory of action which they decide is applicable as long as the proviso of § 411(a)(4) is not violated.

Accordingly, the petition for rehearing is denied.