**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Plaintiffs,**

**v.**

**NATIONAL RIGHT TO WORK LEGAL DEFENSE AND EDUCATION FOUNDATION, INC., et al., Defendants.**

**Civ. A. No. 839–73.**

United States District Court, District of Columbia.

June 5, 1974.

Joseph L. Rauh, Jr., John Silard, Elliott C. Lichtman, Washington, D. C., for plaintiffs.

John L. Kilcullen, Rex H. Reed, Thomas S. Jackson, Washington, D. C., Whitney North Seymour, Conrad K. Harper, Deborah E. Lynch, New York City, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Once again this case is before the Court, in this instance on Plaintiff's Motion to Compel Answers to Interrogatories. After careful consideration of the memoranda filed in support of and in opposition to that motion, and the able oral argument of counsel, the Court has decided to grant Plaintiffs' Motion by Order of even date herewith. However, the matter does not end there. In their memoranda filed with the Court, the parties present divergent opinions as to the applicability of the second proviso to Section 101(a)(4) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 73 Stat. 522, 29 U. S.C. § 411(a)(4), which prohibits "interested employer" financing of employee lawsuits against unions and confers a statutory right of action upon unions to protect themselves from employer interference within the scope of Section 101(a)(4). See this Court's Memorandum Opinion in International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, et al. v. National Right to Work, 366 F. Supp. 46 (D.D.C.1974). The statutory prohibition giving rise to a union right of action states in pertinent part:

> "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency * * * [p]rovided * * * [t]hat no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition."

Defendants contend that the proviso restricts so-called interested employer financing *only* of those employee lawsuits wherein a worker brings a complaint against his or her union showing a violation of rights guaranteed by Section 101(a)–(b) of Title I of the Act.

Plaintiffs argue that the plain meaning of the statute does *not* confine the Section 101(a)(4) proviso to suits against unions which assert Title I violations; rather, Congress intended the Section to apply to any judicial, administrative, or other proceeding brought by a member against his or her union regardless of the nature of the cause of action asserted. For the reasons set forth below, the Court has determined that the proviso's limitation on interested employer financing encompasses every employee suit against his own union and, therefore, we must reject the defendant's proposed restriction of the proviso's prohibition to suits claiming Title I violations.

We start with the language of Section 101(a)(4) itself which is unambiguous. The Section applies without qualification to "an action in any court, or in a proceeding before any administrative agency." The proviso, which follows, restrains interested employers from financing "any *such action,* proceeding, appearance, or petition" and clearly refers to "an action * * * or * * * proceeding" discussed in the primary clause of the section. There is nothing in the statutory language just mentioned to suggest that operation of Section 101(a)(4) with its proviso is somehow confined to Title I lawsuits. As the Court noted in its original memorandum Opinion in this case, "(w)here congressional intent is clear in the language of the statute, there is no need to resort to general rules of statutory construction or legislative history in order to construe the provision in issue. * * *" International U., U. A., A. & A. I. W. v. National Right to Work, 366 F.Supp. at 48.

There are several decisions by appellate courts indicating that Section 101(a)(4) of the Act has application above and beyond suits or proceedings invoking Title I rights. The United States Court of Appeals for this Circuit in Roberts v. N. L. R. B., 121 U.S.App.

D.C. 297, 350 F.2d 427 (1965), considered Section 101(a)(4) of the Act in determining, in part, whether an order of the National Labor Relations Board, finding that the petitioner Union had engaged in unfair labor practices in violation of Section 8(b)(1)(A) of the National Labor Relations Act [1] by fining a member because he had filed unfair labor practice charges with the Board, was invalid because the member failed to first pursue reasonable hearing procedures within the union. The Labor-Management Reporting and Disclosure Act came into play in this action because Section 101(a)(4) of the Act provides, where practicable, for a union member's exhaustion of his union's complaint procedures before turning to the Board or another forum for relief. Thus, the *first* proviso of Section 101(a)(4) which directly precedes the interested employer prohibition, states:

> "[T]hat any such member may be required to exhaust *reasonable hearing procedures* (but not to exceed a four-month lapse of time) *within such organization, before instituting legal* or administrative proceedings against such organizations or any officer thereof * * *"

In its application of the above limitation on a worker's right to sue the Board's Order premised upon Section 8(b)(1)(A) of the NLRA, the Court of Appeals determined that the operation of Section 101(a)(4) of the LMRDA did not in any way preclude the Board's ultimate exercise of its traditional powers under the NLRA to protect individuals from coercion by labor organizations, *but,*

> *"The proviso does authorize indeed it may require,* the agency or court to which the member comes for relief to withhold the exercise of its authority —for four months if reasonable internal procedures are available and are not earlier exhausted—in deference to the congressional desire that a solu-

<hr>

1. 29 U.S.C. § 158(b)(1)(A).

tion be reached by means other than at the hands of public authorities." 350 F.2d at 430. (Emphasis added)

The Court of Appeals' consideration and application of Section 101(a)(4) and the statutory limitations thereupon in its review of proceedings before the Labor Relations Board leaves no doubt that the Section applies beyond the area of suits and proceedings asserting Title I rights under the LMRDA.

The Court's conclusion in this regard is further buttressed by the recent decision by the Supreme Court in N.L.R.B. v. Industrial Union of Marine & Ship Workers, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968), a case involving an exhaustion of internal union procedures issue similar to that in *Roberts, supra.* The issue presented was "whether consistent with the applicable federal statutes [the NLRA and LMRDA] a union may penalize one of its members for seeking the aid of the Board without exhausting all internal union remedies." 391 U.S. at 421, 88 S.Ct. at 1720. The Court noted that the constitution of the union charged with an unfair labor practice provided that a member could be expelled for filing a charge with the Board without first having exhausted " 'all remedies and appeals within the Union.' " 391 U.S. at 422, 88 S.Ct. at 1721. With respect to such internal procedures, Section 8(b)(1)(A) of the NLRA preserves to a union "the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." 29 U.S.C.A. § 158(b)(1)(A). Notwithstanding this restraint on judicial interference with a union's regulation of its internal affairs, the Court found that where union rules penalize members for filing unfair labor practice charges with the Board, other considerations of public policy are operative and must be effectuated. 391 U.S. 418, 88 S.Ct. at 1721.

However, the exhaustion of internal procedures requirement of Section 101(a)(4) of the LMRDA raised a fur-

ther question as to the propriety of the Board action. The Court, in reviewing the relevancy of the first proviso to Section 101(a)(4) and commenting upon its applicability to unfair labor practice charges before the Labor Relations Board, held that the proviso did not bar a dissident worker's access to the Board and, ultimately, the courts, where his grievance could be reviewed and the public policy issues fully aired. The Court concluded that the wording "may be required" in the proviso,

> "is not a grant of authority to unions more firmly to police their members but a statement of policy that the public tribunals whose .aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union. We read it, in other words, as installing in this labor field a regime comparable to that which prevails in other areas of law before the federal courts, which often stay their hands while a litigant seeks administrative relief before the appropriate agency. * * * We conclude that unions were authorized to have hearing procedures for processing grievances of members, provided those procedures did not consume more than four months of time; but that a court or agency might consider whether a particular procedure was 'reasonable' and entertain the complaint even though those procedures had not been 'exhausted.' " 391 U.S. at 426, 88 S.Ct. at 1723–1724.

Similarly, this Court reads the second proviso to Section 101(a)(4) of the Act "as installing in this labor field" a principle that interested employers must stay their hands from contributing to employee suits against their unions regardless of the type of claims asserted therein.

■ Defendants also argue that where an action is properly brought by a union member against his union premised

upon a non-Title I claim, "interested employer" financing is not precluded by Section 101(a)(4) of the Act because such preclusion would limit a union member's rights in violation of Section 103 of the Act. 29 U.S.C. § 413. Section 103 provides:

"Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and by-laws of any labor organization."

Defendants contend that were the Court to apply Section 101(a)(4) beyond the area of Title I suits, for example, to NLRB proceedings,[2] it would be "limiting" the union member's right to sue in derogation of Section 103.[3]

Defendants misconceive the import of Section 103, which is intended generally to preserve employee rights of action under the NLRA. It does not preserve a pre-existing right to employer financing since obviously employers are under no such obligation. At best, a dissident and litigious worker has a right to accept his employer's financial support, just as he is entitled to accept a loan from his bank or neighbor. However, it is the responsibility of this Court in implementing the mandate of the LMRDA to apply the statutory ban on "interested employer" contributions to employee suits against unions. The result is not an infringement on an employee's right to sue his union, but a limitation on what monies can finance the suit. The decision to restrain employer financing of employee lawsuits against unions was made by Congress through the enactment of Section 101(a)(4) and the LMRDA, and the Court intends to implement this Congressional mandate where appropriate.

In view of the foregoing reasons, the statutory bans on "interested employer" financing extends beyond suits or proceedings arising under Section 101(a)-(b) of Title I of the LMRDA.

---

2. N.L.R.B. v. Industrial Union of Marine & Ship Workers, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968) ; Roberts v. N.L.R.B., *supra.*

3. In support of this proposition, defendants rely on the recent decision by the Court of Appeals for the Seventh Circuit in Adamszewski v. Local 1487, Machinists, 496 F.2d 777 (7th Cir. 1974). In that case, the Court found that the suit was financed by "interested employers" and on that basis dismissed a claim for injunctive relief arising under Section 101(a)(5) of the LMRDA. The Court chose not to dismiss an additional cause of action brought pursuant to Section 301 of the NLRA, 29 U.S.C. § 185, on similar grounds in light of the so-called savings provision, Section 413, set forth in the text above. Instead, after finding that the employees who had brought the suit were "not * * * precluded by [Section 101(a)(4)] from pursuing any other remedies properly brought," the Court went on to dismiss the additional claim on a separate ground. 496 F.2d at 785. Defendants argue on the basis of *Adamszewski* that a claim "properly brought" under a statute other than Title I of the LMRDA may be financed by interested employers. Defendants' implication of such a holding on the part of the Seventh Circuit is simply erroneous. *Adamszewski* stands for the proposition that the determination that an interested employer has financed a suit arising under the NLRA or the Railway Labor Act, 45 U.S.C. §§ 151–188, is not a basis for dismissal. We find no suggestion in *Adamszewski* that such a case may continue on its merits nourished by interested employer financing. The Court did not need to reach that question since it dismissed the matter in all respects. It is this Court's opinion that such financing could have been restricted pursuant to Section 101(a)(4), notwithstanding the progression of the suit on its merits.